Trixie GUIDRY, et al.

v.

RESOLUTION TRUST CORPORATION
as Receiver for Oak Tree Savings
Bank.

Civ. A. No. 92–322.

United States District Court,
E.D. Louisiana.

April 20, 1992.

Patrick D. Breeden, New Orleans, La.,
for plaintiffs.

Patrice W. Oppenheim, Neil P. Levith,
Abbott & Meeks, New Orleans, La., Iverson O. Mitchell, and Nathaniel Speights,
Speights & Micheel, Washington, D.C., for
defendants.

Marie–Louise Bahlinger, Oak Tree Sav.
Bank, S.S.B., Legal Dept., New Orleans,
La., for defendant/third-party plaintiff.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the RTC's motion to
dismiss for lack of subject matter jurisdiction. For the reasons that follow, the motion is DENIED. The Court, however,
STAYS the case until the RTC completes
its administrative review process.

### I.

In July 1982, the plaintiffs bought a mobile home from Trailercity, Inc. The mobile home was manufactured by Winston
Homes, Inc. The plaintiffs purchased the
mobile home on credit, making a $5,000
downpayment, and paying $429 per month.[1]
From the outset, the plaintiffs had trouble
with the mobile home. One problem was
the continual presence of dust in the mobile
home. Although the defendants attempted
to correct the problems, the plaintiffs were
never satisfied with the results. Consequently, in 1983, the plaintiffs filed suit
against Trailercity, Winston Homes, Ranger Insurance Co.,[2] Home Indemnity Insurance Co.,[3] Great Falls Insurance Co.,[4] and
Dixie Federal Savings and Loan.[5]

1. Dixie Federal Savings and Loan subsequently
acquired this credit paper.

2. Ranger is the insurer of Winston.

3. Home Indemnity also insures Winston.

4. Great Falls is the insurer of Trailercity.

5. Dixie Federal Savings and Loan was later acquired by Oak Tree Savings. On October 13,
1991, the RTC was appointed receiver of Oak
Tree.

The plaintiffs subsequently supplemented their petition, stating a claim for personal injuries. They contend that the dust in the trailer caused them to suffer respiratory and other medical problems. Moreover, plaintiffs claim that the dust caused Ivy Guidry to have a bronchial attack while driving the mobile home. As a result, they say, he lost control and both plaintiffs allegedly suffered serious injuries in the resulting accident.

■ On November 8, 1991, the RTC, as receiver of Oak Tree, removed the case to federal court. On November 13, 1991, in accordance with its administrative procedures, the RTC forwarded the plaintiffs a "Proof of Claim" form. The plaintiff completed and returned the form on December 12, 1991. The RTC has not yet ruled on the claim. The RTC now moves to dismiss for lack of subject matter jurisdiction, claiming that the plaintiffs have failed to exhaust their administrative remedies.[6]

## II.

### A. *FIRREA's Administrative Claim Procedure*

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73 (1989) creates a new, complex scheme "by which the creditors of a failed institution may be required to first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy." *Meliezer, supra* 952 F.2d at 881. It can hardly be held up as a role model of well-crafted legislation. Under 12 U.S.C. § 1821(d)(3), the receiver must notify potential claimants of the bar date—that date after which claims against the failed institution are prohibited. This date may not be less than 90 days after the first time that the notice is published. Once a claim is filed, the FDIC (or RTC) as receiver has 180 days in which to administratively rule on it. *See id.* § 1821(d)(5)(A). The receiver may allow or disallow the claim. *Id.* § 1821(d)(5)(B) & 1821(d)(5)(D). Under § 1821(d)(6)(A), if the claim is denied, the claimant "may request administrative review of the claim .... or file suit on such claim (or continue an action commenced before the appointment of the receiver)." If the claimant fails to comply with this section, the receiver's decision is final. Lastly, to ensure the vitality of this administrative process, claimants must first exhaust their remedies administratively before attempting to obtain judicial relief. *See id.* § 1821(d)(13)(D).[7] The Fifth Circuit has recently held that § 1821(d)(13)(D) "clearly establishes a statutory exhaustion requirement." *Meliezer, supra* at 882.[8]

### B. *The Parties' Contentions*

In this case, the RTC argues that under § 1821(d)(13)(D) and *Meliezer,* this Court does not have subject matter jurisdiction because the RTC has not yet completed the 180 day processing period. The claim is pending administrative review, and, therefore, the plaintiffs have failed to exhaust their administrative remedies. Consequently, the argument goes, the Court must dismiss the suit without prejudice.

The Guidrys respond that dismissal is inappropriate under § 1821(d)(13)(D). They urge that FIRREA does not require a plaintiff in a case that is filed *before* a receiver is appointed to exhaust the admin-

---

**6.** The Court notes that in deciding a motion to dismiss for lack of subject matter jurisdiction, it may consider the complaint, the complaint along with undisputed facts, or even the complaint, the undisputed facts, and its resolution of disputed facts. *See Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881 (5 Cir.1992).

**7.** Section 1821(d)(13)(D) provides:
Except as otherwise provided in this subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has

been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

**8.** In *Meliezer,* the plaintiff sued the RTC after it was appointed receiver of an insolvent Savings and Loan. The plaintiff did not file an administrative claim with the RTC under § 1821(d). The court dismissed the plaintiff's claim without prejudice for lack of subject matter jurisdiction.

istrative remedies. The statute itself is a maze of rather astounding inconsistencies and conflicts. Section 1821(d)(13)(D) prohibits judicial review of claims, "except as otherwise provided in this subsection." The Guidrys claim that this exception applies to § 1821(d)(5)(F)(ii), which provides that:

> [s]ubject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.[9]

This section, according to the Guidrys, permits them to concurrently pursue judicial and administrative remedies on their claims. Since § 1821(d)(5)(F)(ii) is an exception to § 1821(d)(13)(D), they conclude, this Court has jurisdiction over the plaintiffs' case.[10]

### III. *Interpreting FIRREA*

Preliminarily, the Court notes that this case presents difficult questions of statutory interpretation; the statute makes the Internal Revenue Code look like a first grade primer. It is the Court's duty to the extent possible, to "construe a statute consistent with the intent of Congress as expressed in the plain meaning of its language." *Sutton v. United States*, 819 F.2d 1289, 1292 (5 Cir.1987). The analysis begins by examining the statutory text. "Specific words within [the] statute, however, may not be read in isolation of the remainder of that section or the entire statutory scheme." *Id.* at 1293. If the plain language of the statute "provides no clear answer, [the Court] may look to legislative history for guidance." *Dibidale of Louisiana, Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 305 (5 Cir.1990). Thus, in interpreting FIRREA, the Court must be mindful of the statutory text keeping in focus any helpful hints the legislative history might also offer.

In this case, the Court is presented with two discrete issues: does § 1821(d)(13)(D) deprive this Court of subject matter jurisdiction, and, if not, does FIRREA provide for a stay until the administrative process is completed? In other words, may the plaintiffs concurrently seek judicial and administrative review of their claims? The Court holds that it does have subject matter jurisdiction over the case, but stays it until the RTC completes its administrative review.

### A.

■ Section 1821(d)(13)(D) does not deprive this Court of subject matter jurisdiction. It expressly provides that "[e]xcept as otherwise provided in this subsection," no court shall have jurisdiction over any claim seeking payment from the assets of a failed bank. *Id.* It is significant that other sections of FIRREA provide for the Court's continuing jurisdiction over actions that are filed *before* a receiver is appointed. For example, § 1821(d)(5)(F)(ii) states that the filing of an administrative claim "shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of a receiver." (Emphasis added). Similarly, § 1821(d)(6)(A) permits a claimant to "*continue* an action commenced before the appointment of the receiver" if the claim is administratively denied. The word "continue" strongly infers that the Court retains jurisdiction over a case that is filed before a receiver is appointed. Other courts have reached this conclusion. In *Coston v. Gold Coast Graphics, Inc.*, 782 F.Supp. 1532, 1535 (S.D.Fla. Nov. 15, 1991) (citations outlined), the district court sensibly noted that:

> [t]he term 'continue' implies that a party is proceeding forward in an ongoing case without an interruption in the court's jurisdiction. A claimant could not 'con-

---

**9.** Paragraph 12 allows a receiver to request a 90 day stay in an action in which it is or becomes a party. *See id.* § 1821(d)(12)(A).

**10.** Moreover, they also maintain that the case should not dismissed under § 1821(d)(6)(A). This section allows a claimant to request further administrative review, or to "*continue an action*

commenced before the appointment of the receiver"* if his claim is administratively denied. *Id.* § 1821(d)(6)(A). (Emphasis added). Clearly, § 1821(d)(6)(A) does not contemplate the dismissal of a pre-receivership suit because the plaintiff may continue that action after the administrative review process is complete.

tinue' an action over which the court has been deprived of subject matter jurisdiction. The claimant would have to 'refile' such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction.

*See also Hoffman v. Federal Deposit Ins. Corp.*, 136 Bankr. 611 (D.Conn.1992); *Marc Dev., Inc. v. FDIC*, 771 F.Supp. 1163 (D.Utah 1991). *But see New Maine Nat'l Bank v. Reef*, 765 F.Supp. 763 (D.Me.1991). This Court, therefore, holds that § 1821(d)(13)(D) does not deprive it of jurisdiction in a case that is filed before the receiver is appointed.[11] Since the plaintiffs filed their suit before the RTC was appointed receiver, the Court retains jurisdiction over this case.

### B.

The next issue, therefore, is whether the Court may stay the suit, or allow the plaintiffs to prosecute their case while the administrative review process is ongoing. The issue is new to the Fifth Circuit. Plaintiffs assert that FIRREA permits them to pursue judicial and administrative review of their claims at the same time. This Court disagrees. In recent cases, courts have held that FIRREA authorizes an implied stay in cases that are filed before a receiver is appointed. In other words, even though the court retains jurisdiction over a pre-receivership case, the court may and should stay the action until the administrative claims process is complete. For example, in *In re Federal Deposit Ins. Corp.*, 762 F.Supp. 1002, 1004 (D.Mass.1991), the court wrote that:

[i]t is not clear from the face of § 1821(d)(5)(F)(ii) whether its purpose is to allow pending litigation to continue *concurrently* with the administrative claim review process or to supplement § 1821(d)(6)(A), which allows for the continuation of actions commenced before the appointment of the ... receiver *after* completion of the administrative claim review.

The court concluded that in pre-receivership cases "the right to a stay is necessarily implied in" FIRREA's administrative review process. *Id.* The district court reasoned that to permit concurrent judicial and administrative action would create "an irreconcilable conflict ... between § 1821(d)(5)(F)(ii) and § 1821(d)(6)(A)." *Id.* The court looked to FIRREA's legislative history for guidance, and commented that:

[i]t is clear that Congress manifested an intent to permit a claimant to continue an action on a claim instituted against an insolvent bank before appointment of the ... receiver for that bank *only after* the claimant has exhausted the administrative claim review procedure.

*Id.* at 1005 (emphasis added).[12] To permit administrative and judicial remedies to run their course on parallel tracks would seem to invite chaos and thwart the administrative scheme Congress sought to create. Thus, it seems to this Court, § 1821(d)(5)(F)(ii) was not intended to create a concurrent system of judicial and administrative conduct. Instead, it would seem "Congress manifested an intent to require a stay of all claims against an insolvent bank pending review of those claims by the ... receiver." *Id.* Conse-

11. Thus, the timing of a suit is essential under § 1821(d)(13)(D). In pre-receivership cases, a court retains jurisdiction, and must stay the action until the plaintiff exhausts the administrative remedies. *See infra.* However, in a post-receiver case, the Court must dismiss for lack of subject matter jurisdiction if the plaintiff failed to exhaust the administrative remedies. *See Meliezer, supra.*

12. The court cites the House Report that discussed FIRREA's administrative review process. That report says:

*After* exhaustion of streamlined administrative procedures, a claimant has a choice to either bring a claim de novo in the District Court ... or have the claim determination reviewed by ... administrative process[ ].... Any suit (or *motion to renew a suit filed prior to the appointment of the receiver*) must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative [review] process is available *only after the claimant has first presented its claim to the FDIC.*

*Id.* at 1005 (quoting House Report No. 101–54(I), 101st Cong., 1st Sess., *reprinted in,* 1989 U.S.Code Cong. & Admin.News 86) (emphasis in original).

quently, the Massachusetts court found, and this Court agrees, that FIRREA infers authority to stay pre-receivership litigation until the administrative review process is completed.

Others have reached the same conclusion. In *Tuxedo Beach Club Corp. v. City Federal Sav. Bank*, 737 F.Supp. 18, 19 (D.N.J.1990), the court said that § 1821(d)(5)(F)(ii) appears to "give plaintiffs the right to continue their actions without interruption." Nevertheless, § 1821(d)(6)(A) "seems to clearly envision a 180–day stay until the receiver processes the claim." *Id.* To resolve this apparent conflict, that court also invoked the legislative history, and concluded that "despite the various provisions in FIRREA which are difficult to reconcile, we find that Congress intended to provide for a 180–day stay" in pre-receivership cases.[13] *Id.* at 20. The *Tuxedo Beach Club* court refused to allow the plaintiff in a pre-receivership case to concurrently pursue judicial and administrative remedies. *See also Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10 Cir.1991); *Hoffman, supra; Bank of New England, N.A. v. Callahan*, 758 F.Supp. 61 (D.N.H.1991) (adopting the reasoning of *Tuxedo Beach*); *Coston, supra* 782 F.Supp. at 1536 (collecting cases); *International Fidelity Ins. Co. v. Yorkville Federal Savings & Loan*, 1990 WL 165720 (S.D.N.Y Oct. 19, 1990).

This Court adopts the reasoning of *In re Federal Deposit* and *Tuxedo Beach Club* and holds that FIRREA implicitly authorizes and requires that a pre-receivership case be stayed until the administrative process is finished. In short, the Court rejects the contention that FIRREA permits concurrent judicial and administrative review of the plaintiffs' case.

Not all is harmonious in the rather scant case literature, however. Two courts have recently refused to recognize an implied 180–day stay in pre-receivership cases. In *In re General Develop. Corp. v. FDIC*, 135 Bankr. 1015 (S.D.Fla.1991) and *Marc Dev.,*

*Inc. v. FDIC*, 771 F.Supp. 1163 (D.Utah 1991) those courts concluded that concurrent judicial and administrative remedies were permissible. In both cases, the courts essentially felt that such a stay would make the 90–day stay in § 1821(d)(12)(A)(ii) superfluous. Both courts wondered "[w]hy would Congress expressly grant only a 90 day stay if Congress intended that proceedings be stayed for 180 days during the FDIC's decision making?" *Marc Dev., supra* at 1167. This Court, however, finds that reasoning unpersuasive. The 90–day stay and the 180–day stay are arguably reconcilable. The 90–day period is the agency's space in which to learn about the case; but the 180–day period within which administrative decisions on claims are reached commences only after the time within which those claims are filed. As recently observed by the Third Circuit,

> the 180–day stay need not render the 90–day stay … superfluous…. First, neither the exhaustion of remedies requirement nor the FIRREA administrative claims procedure applies to actions the thrift itself commenced before it went under. And when the failed thrift is the plaintiff and RTC … is thrust headlong into the ongoing dispute, [the 90–day stay] is RTC's only means to hold the defendants at bay for a modest period while it familiarizes itself with the history and status of the litigation. Second, neither the administrative stay nor the administrative claims procedure assists RTC in its capacity as *conservator* of the bridge thrift, rather than receiver of the failed thrift. Section 1821(d)(12)(A)(i), by contrast, specifically applies to lawsuits implicating the RTC in its capacity as conservator.

*Praxis Properties v. Colonial Sav. Bank*, 947 F.2d 49, 64–65 n. 14 (3 Cir.1991) (emphasis in original).

By requiring the plaintiffs to exhaust their administrative remedies, the Court "allows the RTC 'to perform its statutory function of promptly determining claims so

---

**13.** In a footnote, the court suggested that its conclusion might have been different if the plaintiff's case had been pending for a long

period of time. *See Tuxedo Beach, supra* at 20 n. 1.

as to quickly and efficiently resolve claims against a failed institution without resorting to litigation.' " *Meliezer, supra* at 2391 (citation omitted). Concurrent judicial and administrative review of pre-receivership cases would completely undermine the need and efficacy of the administrative process. Moreover, in this case a stay serves judicial economy. If the Court were to dismiss the RTC without prejudice, it would have to remand the case to state court for lack of subject matter jurisdiction. After the administrative review process ends the RTC would then be re-sued, re-served, and the case would presumably be re-removed to federal court. A stay avoids this waste of judicial resources. It is the only result that makes some sense of otherwise regrettably puzzling statutory pronouncements.

Accordingly, the RTC's motion to dismiss is DENIED. The Court, however, STAYS the plaintiffs' case until the RTC completes its administrative review of the plaintiffs' claim.[14]

---

**14.** In their opposition, the plaintiffs argued that a remand was appropriate because the RTC allegedly removed the case while a 90–day stay order was in effect in state court. Not only do the plaintiffs fail to cite a single case or statute that would support their position, but this Court cannot find any congressional or judicial authority that would suggest this result. This case will be closed pending completion of the administrative process.