United States Court of Appeals,

Fifth Circuit.

No. 93-1329

Summary Calendar.

John H. CARNEY and James R. Fisher, a/k/a Bill Fisher, Plaintiffs-Appellants,

v.

RESOLUTION TRUST CORPORATION, as receiver for MeraBank Savings, in its corporate capacity and as conservator of New MeraBank Texas, FSB El Paso, Texas, as receiver for MeraBank Savings, Defendant-Appellee.

Jan. 11, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before KING, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

PER CURIAM:

John H. Carney and James R. Fisher brought a declaratory judgment action against the Resolution Trust Corporation (RTC) in its corporate capacity and its capacities as receiver for MeraBank Texas, FSB El Paso, Texas (MeraBank), and as conservator of New MeraBank Texas, FSB El Paso, Texas (New MeraBank). Carney and Fisher also asserted pendent state law claims. The district court granted the RTC's motion to dismiss. Carney and Fisher appeal. We affirm in part, reverse in part, and remand the case to district court.

I. FACTS AND PROCEDURAL HISTORY

Monzer Attar brought an action in the 364th District Court of Lubbock County (the state court action) seeking damages from MeraBank and EquiSource Realty Corporation (EquiSource). On May 30, 1991, the Office of Thrift Supervision (OTS) appointed the RTC as receiver for MeraBank and as conservator of New MeraBank. The RTC as receiver for MeraBank was substituted for MeraBank in the state court action as the party defendant.

On September 23, 1991, the RTC as receiver for MeraBank filed a motion requesting permission from the state court to file a third party action against Carney and Fisher, former officers of EquiSource. Carney and Fisher then filed their original complaint in federal district court on

December 18, 1991, against the RTC as receiver for MeraBank seeking a resolution of the matters in controversy in the state court action. Carney and Fisher asserted that the district court had jurisdiction to decide the declaratory judgment action under 28 U.S.C. § 1346.

On December 26, 1991, the RTC as conservator of New MeraBank filed a third party petition against Carney and Fisher in the state court action alleging that the damages that Monzer Attar sought were caused by EquiSource and by Carney and Fisher, individually. The RTC as conservator of New MeraBank had previously intervened in the state court action because it owned the claims asserted against Carney and Fisher. The RTC then filed its answer and a motion to dismiss Carney and Fisher's complaint. The RTC argued that Carney and Fisher's complaint should be dismissed because 28 U.S.C. § 1346 does not authorize the award of declaratory relief against the United States.

Carney and Fisher then moved for leave of the court to file an amended complaint, which the district court granted. On March 12, 1992, Carney and Fisher filed their first amended complaint. In their first amended complaint, Carney and Fisher asserted, in addition to their claim for declaratory relief, injunctive relief for denial of due process, monetary damages for intentional infliction of emotional distress, and injunctive relief and monetary damages for tortious interference with prospective contractual relations. Additionally, they asserted that the district court had jurisdiction pursuant to 28 U.S.C. §§ 1346, 1338.

On March 23, 1992, the RTC as receiver for MeraBank filed a motion to dismiss Carney and Fisher's first amended complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim for which relief could be granted. The district court granted the RTC's motion. The district court determined that it lacked subject matter jurisdiction under 28 U.S.C. §§ 1346, 1338. Carney and Fisher then filed a motion for reconsideration. In their motion for reconsideration, Carney and Fisher argued that the district court did have jurisdiction in this case pursuant to 12 U.S.C. § 1441a(*l*),(1), the Federal Home Loan Bank Act. Carney and Fisher further argued that the reference in their complaint to § 1338 was a typographical error and that the complaint should have stated § 1331. The district court reinstated the case and vacated its prior order. On April 3, 1992, the OTS

replaced the RTC as conservator of New MeraBank with the RTC as receiver for New MeraBank.

On September 4, 1992, Carney and Fisher filed their second amended complaint. In their second amended complaint, Carney and Fisher asserted that their claims were against the RTC in its corporate capacity and in its capacities as receiver for MeraBank and as conservator of New MeraBank. Carney and Fisher also stated that the district court had jurisdiction to hear the case under the Federal Home Loan Bank Act, 12 U.S.C. § 1441a(*l* )(1).

The RTC then filed a motion to dismiss Carney and Fisher's second amended complaint. The RTC alleged three grounds for dismissal: (1) lack of subject matter jurisdiction, (2) failure to state a claim for which relief could be granted, and (3) pendency of a state court action which will serve to resolve all issues between the parties. The district court determined that it lacked subject matter jurisdiction over Carney and Fisher's claims for monetary damages because § 1821(d)(13)(D) of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) precluded Carney and Fisher from asserting those claims against the RTC before exhausting their administrative remedies. Therefore, the district court dismissed Carney and Fisher's claims for monetary damages for intentional infliction of emotional distress and tortious interference with prospective contractual relations because it lacked subject matter jurisdiction over those claims.

The district court went on to determine that FIRREA's jurisdictional bar in § 1821(d)(13)(D) did not preclude the plaintiffs from pursuing injunctive and declaratory relief against the RTC. However, the district court determined that Carney and Fisher's claims for injunctive relief for denial of due process and tortious interference with prospective contractual relations should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief could be granted. Finally, the district court also dismissed Carney and Fisher's request for a declaratory judgment.

## II. STANDARD OF REVIEW

We review the district court's dismissals under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) de novo. *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). We take the allegations of the complaint to be true, and we will not affirm the district court's dismissal unless it appears

beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Id.*

## III. DISCUSSION

### A. *Subject matter jurisdiction*

*1. Claims for monetary damages*

Initially, Carney and Fisher allege that the district court erred in determining that it did not have subject matter jurisdiction over their claims for monetary damages. Subject matter jurisdiction is determined at the time that the complaint is filed. *Rosa v. Resolution Trust Co.,* 938 F.2d 383, 392 n. 12 (3d Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); *F. Alderete Gen. Contractors v. United States,* 715 F.2d 1476, 1480 (Fed.Cir.1983). The district court determined that at the time Carney and Fisher filed their second amended complaint the RTC had been named as receiver for New MeraBank and that, therefore, the jurisdictional bar of FIRREA required Carney and Fisher to exhaust their administrative remedies before it could obtain jurisdiction over their claims for monetary damages against the RTC. Carney and Fisher argue, however, that their second amended complaint relates back to the time that they filed their first amended complaint and that FIRREA's jurisdictional bar would not therefore apply to their claims for monetary damages because they filed their first amended complaint before the RTC was named as receiver.

In *Sessions v. Rusk State Hosp.,* we stated that

> [a] complaint that is defective because it does not allege a claim within the subject matter jurisdiction of a federal court may be amended to state a different claim over which the federal court has jurisdiction. If the claim asserted in the amendment arises out of the conduct or occurrence set forth in the original complaint, the amendment is given retroactive effect to the date the original complaint was filed.

648 F.2d 1066, 1070 (5th Cir.1981) (citations omitted). Relation back to the date of the original filing applies even when the amendment states a new basis for subject matter jurisdiction. *Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 887 (3d Cir.1992) (determining that when the plaintiffs amended their complaint to establish diversity jurisdiction the amendment related back to the date of the filing of the original complaint so that the statutory requirement of $10,000 to establish diversity jurisdiction applied instead of the new $50,000 requirement); 3 JAMES WM. MOORE ET AL.,

MOORE'S FEDERAL PRACTICE ¶ 15.15[3.-2], at 15-154 (2d ed. 1993) (noting that an amendment which changes the jurisdictional basis of an action will relate back to the date of the filing of the original complaint, if the factual situation alleged otherwise remains unaltered); 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1497, at 80 (2d ed. 1990) ("Amendments curing a defective statement of subject matter jurisdiction ... will relate back"). In this case, the district court should have determined whether Carney and Fisher's second amended complaint related back to the time that they filed their original complaint or their first amended complaint. For purposes of this appeal, however, we need not determine whether Carney and Fisher's second amended complaint should be characterized as relating back to the time of the filing of the original complaint or the first amended complaint. Under either scenario, Carney and Fisher would have filed their claims for monetary damages before the RTC was appointed receiver for New MeraBank.

We now address Carney and Fisher's argument that because they filed their claims for monetary damages before the RTC was appointed receiver for New MeraBank, FIRREA's jurisdictional bar does not apply to those claims. Section 1821(d)(13)(D) of FIRREA provides that:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (Supp. IV 1992). In *Meliezer v. Resolution Trust Co.,* we determined that § 1821(d)(13)(D) of FIRREA deprived a district court of subject matter jurisdiction over claims brought against the RTC after the RTC was appointed receiver of a depository institution. 952 F.2d 879, 881-82 (5th Cir.1992). In this case, however, the claims asserted by Carney and Fisher against the RTC relate back to a date before the RTC was appointed receiver of New MeraBank. The question presented here is whether claims filed, under a relation back theory, before the RTC is appointed receiver are also subject to FIRREA's jurisdictional bar.

We note initially that FIRREA makes participation in the administrative claim review process

mandatory, regardless of whether the claims were filed before or after the RTC was appointed receiver of the failed institution. *Marquis v. FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992); *see Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 882 (5th Cir.1992) (holding that FIRREA establishes a statutory exhaustion requirement). Naturally, the RTC argues that FIRREA's jurisdictional bar applies to both pre- and post- receivership claims. However, we agree with all circuits that have thus far addressed this issue and conclude that when claims for monetary damages are brought before the RTC is appointed receiver, a court continues to have subject matter jurisdiction over those claims. *Marc Dev., Inc. v. FDIC,* 992 F.2d 1503, 1506-07 (10th Cir.1993), *reh'g granted* (August 31, 1993); *Marquis,* 965 F.2d at 1152-53; *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 392 (3d Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Several sections of FIRREA support this conclusion. For example, § 1821(d)(6)(A) permits a claimant "to *continue* an action commenced before the appointment of the receiver" after the RTC has denied the claim. Additionally, § 1821(d)(5)(F)(ii) provides that the filing of a claim "with the receiver shall not prejudice any right of the claimant to *continue* any action which was filed before the appointment of the receiver." It appears clear to us that a claimant could not "continue" an action that should have been dismissed. *Marc Dev.,* 992 F.2d at 1506-07 (adopting and incorporating the district court's opinion which stated that "[a] claimant could not "continue' an action over which the court had been deprived of subject matter jurisdiction. The claimant would have to "refile' such a lawsuit because the suit would have been dismissed due to lack of subject matter jurisdiction"); *Marquis,* 965 F.2d at 1152-53 (noting that because § 1821(d)(5)(F)(ii) refers to a claimant's right to *continue* an action, Congress did not intend for the action to be dismissed); *Guidry v. Resolution Trust Corp.,* 790 F.Supp. 651, 653 (E.D.La.1992) (noting that the word *continue* in §§ 1821(d)(5)(F)(ii), (d)(6)(A) "strongly infers that the court retains jurisdiction over a case that is filed before a receiver is appointed"); *Coston v. Gold Coast Graphics, Inc.,* 782 F.Supp. 1532, 1535 (S.D.Fla.1992) (stating that "the term "continue' in *both* § 1821(d)(5)(F)(ii) and § 1821(d)(6)(A) indicates that the Court is not deprived of jurisdiction over the action"). Therefore, we conclude that because Carney and Fisher filed their claims against the RTC before the RTC was appointed receiver of New MeraBank, the district court had subject

matter jurisdiction over their claims.

However, our conclusion that the district court had subject matter jurisdiction over Carney and Fisher's claims for monetary damages against the RTC does not necessarily mean that Carney and Fisher can assert their administrative and judicial remedies concurrently. Congress enacted FIRREA to create an efficient method for processing claims against failed banks. *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881 (5th Cir.1992). It appears clear to us that allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA. We conclude, as other courts have done, that FIRREA creates a "scheme under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing, the suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." *Marquis,* 965 F.2d at 1154; *see also Guidry,* 790 F.Supp. at 654-55; *In re FDIC,* 762 F.Supp. 1002, 1004 (D.Mass.1991).[1] We therefore disagree with the Tenth Circuit's determination that when a party has filed suit against a depository institution before the RTC is appointed receiver the party may pursue his administrative and judicial remedies concurrently subject only to the RTC's ability to request a 90-day stay pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii). *Marc Dev., Inc. v. FDIC,* 992 F.2d 1503, 1506-07 (10th Cir.1993), *reh'g granted* (August 31, 1993). The Tenth Circuit determined that requiring the district court to grant a stay for longer than 90 days was inconsistent with § 1821(d)(12)(A)(ii) and would render that section superfluous. *Id.* at 1507. Section 1821(d)(12)(A) provides that:

> After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—

---

[1]The House Report discussing FIRREA's administrative review process further supports our conclusion. The report states:

> The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period. A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice. Any suit (*or motion to renew a suit filed prior to appointment of the receiver*) must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative process is available *only after the claimant has first presented its claim to the FDIC.* H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 418 (1989), *reprinted in* 1989 U.S.C.A.A.N. 86, 214 (emphasis added).

(i) 45 days, in the case of any conservator;  and

(ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party.

We conclude, however, that granting a stay to allow the claimant to exhaust his administrative remedies is consistent with Congress' purpose in enacting FIRREA and does not render § 1821(d)(12)(A)(ii) superfluous because that section still applies when the RTC is thrust into ongoing litigation in which the failed thrift had been the plaintiff. *Praxis Properties, Inc. v. Colonial Savings Bank,* 947 F.2d 49, 63-64 n. 14 (3d Cir.1991).

In summary, the district court erred in dismissing Carney and Fisher's claims for monetary damages against the RTC for lack of subject matter jurisdiction.  The district court should have stayed the proceedings to allow Carney and Fisher to exhaust their administrative remedies.[2]

## 2. Claims for injunctive and declaratory relief

The RTC argues that the district court should have determined that FIRREA's administrative claim review process also applied to Carney and Fisher's claims for injunctive and declaratory relief because the right to proceed against Carney and Fisher in the state court action involves an asset of New MeraBank.  The district court determined that FIRREA's administrative claim review process did not apply to Carney and Fisher's claims for injunctive and declaratory relief because those claims did not involve "payment from or recovery of assets, or determining rights with respect to assets."  Section 1821(d)(13)(D) describes the type of "claims" that Congress intended for parties to present to the administrative claim review process before pursuing a judicial remedy.  Section 1821(d)(13)(D) bears repeating:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

---

[2]We acknowledge that Carney and Fisher may be time barred from utilizing the administrative claims review process, but we cannot decide this issue because there is nothing in the record to indicate what date the RTC set for filing claims against New MeraBank.  As we have previously stated, if Carney and Fisher are unable to pursue their claims through the administrative claims review process, then Carney and Fisher will forfeit their right to pursue their claims against the failed institution's assets in any court.  12 U.S.C. § 1821(d)(5)(C)(i) (Supp.IV 1992) ("claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final");  *see also Marquis v. FDIC,* 965 F.2d 1148, 1152 (1st Cir.1992).

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver;  or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

FIRREA further provides that the RTC is to "determine claims," 12 U.S.C. § 1821(d)(3)(A), and to "pay creditor claims," *id.* § 1821(d)(10)(A).

In connection with Carney and Fisher's claims for denial of due process and tortious interference with prospective contractual relations, Carney and Fisher sought, *inter alia,* to enjoin the RTC from (1) making any statement that they converted funds or are individually liable for the conduct of EquiSource and (2) attempting to engage them in the state court action.  Additionally, Carney and Fisher sought a declaratory judgment by the district court that they were not liable to the RTC for the conduct of EquiSource.  Carney and Fisher's claims for injunctive and declaratory relief are not claims for "payment from" or recovery of any assets of New MeraBank.

In *Resolution Trust Corp. v. Ryan,* the court addressed a situation similar to the one before us.  801 F.Supp. 1545 (S.D.Miss.1992).  In *Ryan,* the RTC had instituted an action against former officers and directors of a failed bank.  *Id.* at 1547.  The defendants in the action answered RTC's complaint denying any wrongdoing and seeking by counterclaim a declaratory judgment against the RTC.  *Id.*  In their counterclaim for declaratory relief, the defendants sought a declaration by the court that they had incurred no liability to the RTC.  *Id.* at 1548.  The RTC argued that the district court lacked subject matter jurisdiction over the counterclaim asserted by the defendants because any declaratory judgment granted by the district court to the defendants would preclude recovery by the RTC, thus affecting the assets of the failed depository.  *Id.* at 1555-56.  The district court concluded, however, that it had subject matter jurisdiction over the defendants' claim for declaratory relief because the defendants' defense and their counterclaim action were essentially the same:  that they were not liable in the action that the RTC was bringing against them.  *Id.* at 1556.  The district court therefore decided that "if RTC failed to prove its claim against defendants, it would not recover against them;  but that result would enure irrespective of whether this court assumed jurisdiction over

defendants' counterclaim." *Id.*

The issue of whether FIRREA's administrative claim review process applies to a claim for nonmonetary relief was also addressed by the Third Circuit in *Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 394-95 (3d Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). In *Rosa,* participants in and beneficiaries of a pension plan sought an injunction by the district court prohibiting the RTC from retroactively terminating the pension plan. *Id.* at 388. The court determined that clause (i) of § 1821(d)(13)(D) did not "encompass purely injunctive claims relating to retroactive termination of a plan." *Id.* at 394. The court also concluded that clause (ii) did not bar a claim seeking to restrain the retroactive termination of the plan because "[w]hatever its breadth, we do not believe that clause (ii) encompasses claims that are not susceptible of resolution through the claims procedure." *Id.* at 394. The court further stated that it was "at a loss to understand how RTC would "determine,' or "allow' or "disallow,' a claim seeking an order barring retroactive termination of the plan, or how it would "pay' such a claim if allowed." *Id.* at 395.

In this case, the RTC characterizes its claims against Carney and Fisher as assets of New MeraBank. Thus, in its view, Carney and Fisher's actions for injunctive and declaratory relief are "claims" against the assets of New MeraBank. We conclude, as the district court in *Ryan* did, that the claims review process does not apply to a "claim" which is essentially a determination that parties are not liable to the RTC in an action that the RTC has brought against them. If we interpreted the reach of FIRREA's administrative claim review process as broadly as the RTC would have us, we would also have to conclude that Carney and Fisher could not argue in the state court action that they were not liable to the RTC unless they first presented their defense to FIRREA's administrative claim review process. Furthermore, to paraphrase the *Rosa* court, we are at a loss to understand how the RTC could "allow," "disallow," or "pay" Carney and Fisher's claims for injunctive relief. Therefore, we conclude that, under the specific facts of this case, the district court did not err in determining that FIRREA's claim review process did not apply to Carney and Fisher's claims for injunctive and

declaratory relief.[3] As will be seen *infra,* the fact that FIRREA's claim review process does not apply to Carney and Fisher's claims for injunctive and declaratory relief does not mean that parties who seek a determination by a federal district court that they are not liable to the RTC in a separate proceeding will necessarily be able to seek final relief.

### B. Failure to state a claim for which relief can be granted

Carney and Fisher also allege that the district court erred in dismissing their claims which sought injunctive relief for failure to state a claim for which relief could be granted. In their second amended complaint, Carney and Fisher sought injunctive relief for a denial of due process and tortious interference with prospective contractual relations. Carney and Fisher complain that they were not brought into the state court action until it had already been underway for almost two years. They assert that if they had been made parties to the litigation earlier in the proceeding they would not have severed their relationship with Greentree Investors, Ltd. (a defendant in the state court action), sold all their stock interests in EquiSource, abandoned significant resources including books and records of EquiSource, or settled corporate indebtedness of EquiSource with funds received through a separate arbitration and settlement.

*1. Denial of Due Process*

In their claim for denial of due process, Carney and Fisher complain that they have been denied their rights to due process because

> (a) Plaintiffs are no longer in a position (i.e., with access to records or documents) to mount a strong defense and, (b) Plaintiffs are so far behind the learning curve (i.e., discovery) in the state court litigation that they could not attain the same level of preparedness as the other parties in the case even if they had the financial standing to obtain copies of all discovery documents and hire the support staff to analyze the documents and prepare for the rapidly-approaching trial date.

Basically, Carney and Fisher allege that their rights to due process include being named as a party to the state court action early in the proceeding. We can find no authority to support this proposition, and Carney and Fisher have not directed us to any. Therefore, we conclude that Carney and Fisher's claim for a denial of due process is meritless.

---

[3]Thus, we do not hold that FIRREA's administrative claim review process would never apply to a claim for injunctive or declaratory relief.

*2. Tortious Interference with Prospective Contractual Relations*

Carney and Fisher also seek injunctive relief for tortious interference with prospective contractual relations. Carney and Fisher allege that the "expenditures of time and money have impacted each Plaintiff's respective business" and that they have been forced to focus on the state court action "rather than conduct regular business activities or contact or assume responsibility for prospective contractual relations." Additionally, Carney and Fisher allege that the RTC "particularly by its insulting accusations of conversion, has tortiously and intentionally interfered with each Plaintiff's prospective business relations."

Under Texas law, to establish a claim for tortious interference with prospective contractual relations, the plaintiff must establish that (1) there was a reasonable probability of entering into a contractual relationship, (2) the defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming the plaintiff, and (3) actual harm or damage occurred as a result. *Kiepfer v. Beller,* 944 F.2d 1213, 1220 (5th Cir.1992). Carney and Fisher's allegations against the RTC all relate to the fact that they were named as defendants in the state court action. Carney and Fisher must allege that it reasonably appeared in view of all of the circumstances that a prospective contract would have been made without the interference. *Harshberger v. Reliable-Aire, Inc.,* 619 S.W.2d 478, 481 (Tex.Civ.App.—Corpus Christi 1981, no writ). Furthermore, Carney and Fisher must allege that the RTC knew of and intentionally intended to interfere with a prospective contractual relationship. *Verkin v. Melroy,* 699 F.2d 729, 733 (5th Cir.1983). Additionally, "[a] complaint which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice." *Walker v. South Cent. Bell Tel. Co.,* 904 F.2d 275, 277 (5th Cir.1990). Carney and Fisher do not allege any facts concerning what prospective contractual relations the RTC intentionally interfered with. While we acknowledge that being named as defendants in the state court action may have affected their businesses or reputations, we conclude that they have not stated a cause of action for tortious interference with prospective contractual relations by merely alleging that the defendants named them in a lawsuit.

## C. Declaratory Judgment

Carney and Fisher also allege that the district court erred in dismissing their declaratory judgment action. Carney and Fisher sought a judgment by the district court that they were not liable for any claims that the RTC had brought or might bring against them in the state court action. A district court is not required to decide a declaratory judgment action. *Rowan Co's. Inc. v. Griffin,* 876 F.2d 26, 28 (5th Cir.1989). We review a district court's decision to dismiss a declaratory judgment action under the abuse of discretion standard. *Id.* at 29. In *Rowan,* we determined that a district court may consider a variety of factors in determining whether to decide a declaratory judgment action including (1) a pending state court action in which the matters in controversy may be fully litigated, (2) that the declaratory judgment was filed in anticipation of another suit and is being used for the purpose of forum shopping, (3) the possible inequities in permitting the plaintiff to gain precedence in time or forum, or (4) inconvenience to the parties or witnesses. *Id.* Carney and Fisher argue that while the first two factors are present in this case, the other factors require a determination that the district court abused its discretion in dismissing their declaratory judgment action. Carney and Fisher misread *Rowan. Rowan* does not require a district court to examine each of the listed factors. The *Rowan* court stated that these four factors were only examples of the variety of factors that a district court could look at in determining whether to decide a declaratory judgment action. *Rowan* does not set forth a four-factor test for district courts to follow.

The district court declined to decide Carney and Fisher's suit for declaratory judgment because Carney and Fisher had filed the action in anticipation of being named as defendants in the state court action and for the purpose of forum shopping. The district court also determined that Carney and Fisher would be able to fully and fairly litigate the matters in controversy in the state court action. We conclude that the district court did not abuse its discretion in dismissing Carney and Fisher's action for declaratory judgment.

## IV.

For the foregoing reasons, we REVERSE the district court's determination that it did not have subject matter jurisdiction over Carney and Fisher's claims for monetary damages, AFFIRM the

district's courts dismissal of the plaintiffs' claims for injunctive and declaratory relief, and REMAND for proceedings consistent with this opinion.