**PADDLEWHEEL PROPERTIES, INC. d/b/a Lakehill Apartments, Individually and on behalf of all persons similarly situated, Plaintiff,**

v.

**WASTE MANAGEMENT OF MISSISSIPPI, INC., Defendant.**

**No. CIV.A. 5:96cv186BrS.**

United States District Court, S.D. Mississippi, Western Division.

Sept. 15, 1997.

Richard D. Underwood, Weintraub, Stock, Bennett, Ettingoff, Grisham & Underwood, Memphis, TN, for Plaintiffs.

John C. Henegan, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendants.

## MEMORANDUM OPINION

BRAMLETTE, District Judge.

This matter is before the Court on the motion of the defendant, Waste Management of Mississippi ("WMM") to dismiss the Complaint for lack of subject matter jurisdiction [docket entry no. 6]. The plaintiff, Paddlewheel Properties, Inc. ("Paddlewheel"), has responded in opposition to said motion, and WMM has replied. Based on the submissions, the supporting documents, and the relevant law, the Court finds as follows:

Paddlewheel is a Mississippi corporation doing business as Lakehill Apartments, an apartment complex located in Vicksburg, Mississippi. Paddlewheel entered into a contract with WMM on January 19, 1996 for garbage service collection. On May 24, 1996, pursuant to a clause in the service agreement, WMM attempted to increase its monthly rate from $152.00 per month to $192.00 per month effective June 1, 1996. The increase was allegedly due to increased fuel and disposal costs.

Paddlewheel refused to pay at the new rate and withheld payment. Upon doing so, WMM discontinued service. WMM, in response to Paddlewheel's protests, rescinded the rate increase and credited Paddlewheel's account for those amounts charged in excess of the contract rate.

On November 21, 1996, Paddlewheel filed a complaint against WMM citing diversity and the RICO statute as its basis for subject matter jurisdiction in the federal district court. WMM filed its motion to dismiss on January 29, 1997.

WMM cites five separate grounds for dismissal. First, WMM alleges that both parties are citizens of the state of Mississippi and that the court is without diversity jurisdiction over this cause. Second, the defendant contends that 18 U.S.C. § 1341, the mail fraud statute, does not create a private cause of action. Third, WMM argues that Paddlewheel lacks standing to assert its RICO claim because it has not suffered injury to its business or property by reason of any unlawful act of WMM. Fourth, WMM states that the complaint does not present a case or controversy as required by Article III of the U.S. Constitution. Finally, WMM contends that the complaint should be dismissed due to Paddlewheel's failure to timely submit a RICO Case Statement as required.

### Governing Legal Standard

The standard governing a motion to dismiss under Rule 12(b)(1) or (6) is well established. The court must take the allegations in the complaint to be true unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994); *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992). Subject matter jurisdiction is determined at the time the complaint is filed. *Carney,* 19 F.3d at 954.

### Analysis of the Defendant's Claims

It is undisputed that the plaintiff is a citizen corporation of Mississippi. WMM argues that it is also a citizen of Mississippi, and that, therefore, complete diversity does not exist between the parties. Paddlewheel takes the position that because the payment address for WMM is in Illinois, it is possible that WMM is not a Mississippi corporation. ■ The basic diversity jurisdiction statute provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 and is between -
>
> (1) citizens of different states; . . . .

28 U.S.C. § 1332(a)(1). A corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332. WMM was incorporated in Mississippi. (Def.'s Ex. 4.) The Fifth Circuit applies the "total activity" test to determine a corporations's principal place of business for diversity purposes. *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 406 (5th Cir.1987). This test combines the "nerve center" test and the "place of activities" test. *Olson,* 818 F.2d at 412. Inasmuch as WMM was incorporated in the state of Mississippi, it is a Mississippi citizen. Moreover, it is clear that under the "total activity" test, its principal place of business was Mississippi. WMM had business offices in Mississippi and employees in Mississippi. WMM provided services in the state of Mississippi. Payment for WMM services was directed to an Illinois post office box. This, however, in light of other factors, is insufficient to support a conclusion that WMM was a non-Mississippi corporation. Therefore, diversity is not complete between the parties, and this Court is unable to excise subject matter jurisdiction based on diversity.

Having found that this action involves non-diverse parties, the plaintiff must assert a federal question in order to establish subject matter jurisdiction in the district court. Federal question jurisdiction exists if a complaint states a claim arising under the U.S. Constitution or the laws and treaties of the United States. 28 U.S.C. § 1331. "Dismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision." *Bell v. Health–Mor, Inc.,* 549 F.2d 342, 344 (5th Cir.1977) (citations omitted).

The defendant contends that the plaintiff has attempted to assert a federal question by claiming jurisdiction pursuant to 18 U.S.C. § 1341, the federal mail fraud statute. The complaint states that jurisdiction is brought pursuant to three federal statutes: 28 U.S.C. § 1332 (diversity); 18 U.S.C. § 1961 et. seq. (RICO); and 18 U.S.C. § 1341 (mail fraud). The plaintiff claims that it invoked 18 U.S.C. § 1341 not to invoke the jurisdictional powers of the Court but to show a predicate act of racketeering as required under the RICO statute.

The mail fraud statute is criminal in nature, and it does not create a private right of action. *Bell*, 549 F.2d at 346. Instances of mail fraud may form the predicate acts necessary for a civil RICO claim. *New England Data Services v. Becher*, 829 F.2d 286, 287–88 (1st Cir.1987). The RICO statute, however, provides for a private cause of action. 18 U.S.C. § 1964(c). Thus, while the plaintiff may allege mail fraud as a predicate act for its RICO claim, the mail fraud allegations, in and of themselves, do not create a separate cause of action. *Delta Education, Inc. v. Langlois*, 719 F.Supp. 42 (D.N.H. 1989). The mail fraud statute, therefore, does not create an independent jurisdictional basis for this action.

The defendant also claims that the plaintiff's claim for relief is moot since prior to service of the complaint, WMM had cured any harm allegedly caused by the rate increase. In response, the plaintiff maintains that a sufficiently live controversy exists even though it was never required to pay the proposed rate increase.

Article III of the United States Constitution requires an actual, ongoing case or controversy.

> Article III denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them," and confines them to resolving " 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' "

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990) (citations omitted). A case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). The requirement of a "case or controversy" exists at all stages of the litigation, not only at the time the suit was originally filed. *Lewis*, 494 U.S. at 477, 110 S.Ct. at 1253.

As the Fifth Circuit has noted, "The general rule is that '[claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable. Damages should be denied on the merits, not on grounds of mootness].' " *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205, 208 (5th Cir.1989) (quoting 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3533.3 at 262 (1984)). In the case *sub judice*, the plaintiffs have pled actual and punitive damages resulting from the defendant's alleged RICO violations and expenses flowing from an interruption in garbage collection service. The plaintiff brought the action on behalf of itself and all persons similarly situated. Even though the proposed rate increase never went into effect against Paddlewheel, in light of the allegations in the complaint, the Court is unable to conclude that all monetary relief is precluded.

Next, the defendant seeks dismissal of the complaint due to Paddlewheel's failure to comply with a Court Order requiring it to submit a RICO case statement. On December 20, 1996, the Clerk of Court entered an Order requiring the plaintiff to file a RICO statement within twenty days. The RICO statement filing deadline was set for January 9, 1997. On January 22, 1997, after the deadline and without seeking an extension, the plaintiff filed its RICO statement.

Although the Federal Rules of Civil Procedure give courts discretion to sanction parties for failure to adhere to discovery deadlines, involuntary dismissal would be draconian here. The law favors the resolution of legal claims on the merits. *In re Dierschke*, 975 F.2d 181, 183 (5th Cir.1992). Dismissal as a sanction, therefore, is to be a remedy of last resort. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985).

The Fifth Circuit has articulated three factors that must be present before a district court may dismiss a case as a sanction for violating a discovery order. First, dismissal with prejudice is only appropriate where a refusal to comply is a result of "willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir.1990). In addition, the violation of the discovery order must be attributable to the client instead of the

674

attorney. *Coane*, 898 F.2d at 1032. Finally, dismissal is improper where a less drastic sanction would substantially achieve the desired deterrent effect. *Id.* Inasmuch as dismissal is one of the harshest sanctions that a district court can impose, the party seeking dismissal must show substantial prejudice before the penalty of dismissal is warranted. *Id.*

 While it is true that the plaintiff filed its response approximately two weeks after the deadline, the Court does not find, given the factors above, that a sanction of dismissal is warranted here.

Finally, the defendant claims that Paddlewheel does not have standing to assert a RICO claim, and therefore, the RICO statute does not confer jurisdiction over the complaint. The RICO statute imposes civil and criminal liability on persons who use or invest income derived from, acquire or maintain control of, or engage in the conduct of an enterprise through a pattern of racketeering activity, or who conspire to do any of these acts. 18 U.S.C. § 1962 (1988). Reduced to its essential elements, a violation of § 1962 requires: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988).

 In addition, a RICO plaintiff must have standing to sue pursuant to 18 U.S.C. § 1964(c). "[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L., v. Imrex Co.*, 473 U.S. 479, 495–97, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985). The Civil RICO standing re-

quirement, found in § 1964(c), provides that only persons who have been injured "by reason of" the commission of predicate acts have standing to bring suit. *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275. In the Fifth Circuit, a person will be considered injured "by reason of" a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir.1989). In some instances—shareholder derivative claims, actions analogous to derivative suits, and creditors' claims in bankruptcy—there are also non-RICO standing requirements which must be satisfied.

> [W]hether standing exists to assert a RICO claim entails a two-part inquiry. First, we must determine whether any non-RICO standing requirements apply and have been satisfied. Second, if non-RICO standing requirements have been met or if, given the alleged injury, none apply, the RICO plaintiff must then show that it suffered injuries "by reason of" the commission of a predicate act.

With regard to the RICO standing requirement, the defendant first claims that the plaintiff cannot establish an injury to its business or property. According to the defendant, the plaintiff has not suffered a monetary or a concrete financial loss as a result of its alleged injuries or the alleged RICO violation. The plaintiff replies that it suffered damage to its property or business because it had to make phone calls and write letters to Waste Management to resolve the attempted rate increase.

The issue, then, is whether the time expended in nullifying the rate increase is an injury to business or property.[1] The Court

---

1. The plaintiff understandably takes great exception to the defendant's attempted rate increase and seems to argue that it was imposed unilaterally in violation of the parties' Service Agreement. According to the plaintiff, ratification of a rate increase under Section 4 of the Agreement is accomplished by verbal or written agreement, by the actions of the contracting parties, or by payment of the invoices. In the absence of verbal or written agreement, the plaintiff argues that its payment would have resulted in its acceptance the defendant's unilateral change in the terms of the contract. As the Agreement reads, however, the defendant may increase fees without approval to reflect changes in regulations, taxes, the

CPI, disposal fees and fuel prices but must have the plaintiff's approval for other items referred to in the contract as "fee adjustments." Fee adjustments reflect subsequent modifications of the contract by the parties. Section 4 reads:

> We may increase your fees from time to time to reflect changes in regulations, taxes, the CPI, disposal fees and fuel prices, plus a reasonable margin. Subject to your approval, the *fees* may be *adjusted* for other reasons. Such *fee adjustments*, including those relating to changes in the frequency of collection service or the equipment used, may be agreed to ver-

finds that there was no injury, or if there was an injury, it was not of the type protected by the RICO statute. In *In re Taxable Municipal Bond Securities Litigation,* 51 F.3d 518 (5th Cir.1995), the Fifth Circuit concluded that the plaintiff did not have RICO standing where his alleged injury was speculative and did not show a conclusive financial loss.

 The Court is not persuaded that the plaintiff suffered a RICO injury. The Service Agreement entered into by the parties gave Waste Management the right to increase fees as a result of certain market and regulatory conditions. Waste Management, pursuant to the Agreement, attempted to affect a rate increase. While the plaintiff claims that it suffered an injury as a result of the time it took to resolve the issue of the attempted rate increase, this is not a conclusive financial loss contemplated by the RICO statute. Nor is the plaintiff's complaint that its loss of service left it with a possible loss of tenants. That alleged injury is speculative and not compensable under RICO.

Moreover, the defendant argues that the plaintiff's alleged injury was not "by reason of" the plaintiff's alleged improper conduct. Only persons who have been injured by reason of the commission of predicate acts have standing to bring suit under the RICO statute. The predicate acts must constitute factual (but for) causation and legal (proximate) causation. The plaintiff cannot satisfy the "by reason of" requirement. Any injury it sustained resulted from its refusal to pay the rate increase, not from an alleged RICO violation.

Finally, the defendant claims, with regard to the standing issue, that the plaintiff has not pled and cannot establish a RICO violation. The defendant argues that the plaintiff has not pled the existence of an "enterprise," has not alleged that the defendant's alleged mail fraud was "connected to the acquisition, establishment, conduct, or control" of the

unnamed "enterprise," has not alleged that the "enterprise" is engaged in or affects interstate commerce or foreign commerce, and has not adequately pled the components or elements of mail fraud as a predicate act or "racketeering activity" under the RICO Act. The plaintiff counters that, pursuant to 18 U.S.C. § 1961(4), the defendant itself is the corporation.

Assuming, *arguendo,* that the plaintiff could establish injury and causation, dismissal is supported in this case because the plaintiff cannot establish a RICO violation. Under § 1961(4), an enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Fifth Circuit has determined, however, that the "violator of section 1962(c) who commits that pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted." *Old Time Enterprises, Inc. v. International Coffee Corp.,* 862 F.2d 1213, 1217 (5th Cir.1986). In other words, there must be a distinction between the RICO "person" and the RICO "enterprise." [2]

When faced with the issue of whether § 1962(c) requires a distinction between the RICO person and the RICO enterprise, the Fifth Circuit, adopting the reasoning of the Seventh Circuit in *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), concluded that a distinction must be shown. *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 123 (5th Cir.1986). While a corporation may satisfy the § 1961 definitions of both "person" and "enterprise," the use of the terms "employed by" and "associated with" in § 1962(c) "appears to contemplate a person distinct from the enterprise." *Haroco,* 747 F.2d at 400.

In the case *sub judice,* the person and the enterprise are alleged to be the corporation.

bally, in writing, or by our actions, such as your payment of our invoices.

The letter notifying customers of the rate increase provides that it resulted from "cost of diesel fuels, cost of disposal and associated facilities and transportation networks, equipment costs, compliance costs with DOT, OSHA, SUBTITLE D and other laws and regulations as well as the related investments in our people."

2. "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962.

Under Fifth Circuit precedent, "the violator of section 1962(c) who commits the pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted." *Old Time Enterprises*, 862 F.2d at 1217. The plaintiff cannot establish a RICO violation and its complaint must be dismissed.

Based on the foregoing analysis, the defendant's motion to dismiss is granted, and all claims are dismissed as to the defendant. An appropriate Order shall issue.

IT IS, THEREFORE, ORDERED AND ADJUDGED, that the defendant's motion to dismiss [docket entry no. 6] is granted and the cause is dismissed with prejudice.