PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/16/98
THOMAS K. KAHN
CLERK

No. 96-4118

D. C. Docket No. 92-6603-CIV-KMM

FEDERAL DEPOSIT INSURANCE CORP., as Receiver
for Flagler Federal Savings and Loan
Association,

Plaintiff-Counter-Defendant-Appellee,

versus

LACENTRA TRUCKING, INCORPORATED, a Florida
corporation, WENGER EXCAVATING, INCORPORATED,
an Ohio corporation, MAYFAIR PLUMBING,
INCORPORATED, a Florida corporation,
KJK ENTERPRISES, INCORPORATED, a Florida
corporation d.b.a. Mr. Electric,

Defendants-Counter-Claimants-Appellants,

TARMAC FLORIDA, INCORPORATED, a Florida
corporation,

Defendant-Counter-Claimant.

Appeal from the United States District Court
for the Southern District of Florida

(October 16, 1998)

ON PETITION FOR REHEARING

Before TJOFLAT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

I. History

This case involves a dispute over priority between holders of mechanics' liens filed against a construction site and Resolution Trust Corporation (RTC)[1], holder of a mortgage on that site. It requires application of provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 1839, (codified as amended in scattered sections of 12 U.S.C.). The Act provides for handling of claims of claimants to assets of failed depository institutions and persons seeking a declaration of rights with respect to such assets. It authorizes RTC as receiver to "determine [such] claims." 12 U.S.C. § 1821(d)(3)(A). Section 1821(d)(13)(D) provides that "no court shall have jurisdiction of [any such claim or action] "except as otherwise provided in this subsection." Id. § 1821(d)(13)(D). While not an explicit mandate for exhaustion of administrative remedies these provisions are accepted by the cases and by Congress as having that meaning. See Marquis v. FDIC, 965 F.2d 1148, 1151-52 (1st Cir. 1992). In this case we must consider the interplay between § 1821(d)(13)(D) and the jurisdiction of a court over a pre-receivership claim that is pending in that court when receivership commences.

The district court held that the administrative exhaustion procedures of FIRREA apply to the appellant lienors and that they had not complied with those procedures; therefore it granted

---

[1]Pursuant to the Resolution Trust Corporation Completion Act, 12 U.S.C.§ 1441a(m)(1), the Resolution Trust Corporation ("RTC") was terminated not later than December 31, 1995 and the Federal Deposit Insurance Corporation ("FDIC")succeeded it as conservator or receiver. Accordingly, the FDIC is automatically substituted for the RTC as a party in this action. Fed. R. App. P. 43.Initial pleadings were in the name of Flagler Federal Savings and Loan Association. When Flagler went into receivership it was succeeded by RTC, and it in turn by FDIC.

Because of this succession of events the parties have usually referred to RTC as the Plaintiff-Counter Defendant-Appellee, and we do the same.

We refer to the Defendants-Counter Claimants-Appellants as "appellants,"or "claimants" and as "lienors".

summary judgment to RTC.  <u>Flagler Federal Savings and Loan Association of Miami v. Greenview Apts.</u>, Ltd., 897 F.Supp. 1431 (S.D. Fla. 1995).  This court affirmed in an unpublished opinion.  116 F.3d 1492 (11th Cir. 1997).  The appellants moved for rehearing.

We hold, first, that the district court erred in finding that appellants had not complied with the requirements of FIRREA that their claims be presented to the receiver for administrative processing.  Second, we hold that, even if appellants' claims had not been presented, the district court in which the pre-receivership claims were pending had jurisdiction over them and the receiver had the option to invoke the process of administrative review or to have the claims litigated by the court; the receiver chose the option of litigation and, having made that choice, it could not on the eve of trial invoke the administrative process it had eschewed and thereby have the case dismissed for failure to exhaust.  In considering this first point, we hold that the jurisdiction of a federal court over pre-receivership claims pending in a pre-receivership case is not terminated by the appointment of a receiver.  Next we address the interplay of the jurisdiction of the court over pending pre-receivership claims and the administrative exhaustion requirements of FIRREA.  We hold that the receiver has the option of adjudicating the preexisting claims in the pending litigation or of following the administrative claims procedures of the Act.  And we hold that in this case RTC chose to litigate the claims in the pending case, and having made that election, it could not on the eve of trial invoke the administrative complaint procedures it had foregone to require that the case be dismissed for want of jurisdiction.  Additionally, we hold that the district court erred in holding that the claimants had not complied with the requirements of presenting their claims to the receiver.

3

The motion of the plaintiffs for rehearing is GRANTED.  The decision of this court is VACATED, and this opinion is entered as the opinion of the court.  The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings.

## II.  Background

The liens held by claimants originated from construction of an apartment complex in Broward County Florida by Greenview Apartments, Ltd.  Under Fla. Stat. Ann. § 713.13(1)(a), before "actually commencing" to improve real property an owner must file a Notice of Commencement in the Office of the Clerk of the Circuit Court of the county in which the property is located, and must post a copy thereof.  Fla. Stat. Ann. § 713.13(1)(a) (West 1989). Under § 713.07 a lien for labor, services or materials furnished to the property attaches and takes priority at the time of recording the Notice of Commencement.  Id. § 713.07.  The Notice is of no effect, however, if the improvements described in the Notice are not commenced within 30 days after the recording thereof, and it is not effectual after one year from the date of recording. Id. § 713.13(2) & (5).

The events of this case are set out chronologically.

July 28, 1988:  The Notice of Commencement for the Greenview site was recorded.

August 17, 1988: According to affidavits filed by the lienors in the summary judgment record of the Florida state court, where this case began, on August 17, 1988 a surveying firm performed work at the site consisting of surveying, staking, flagging, and verifying of property boundary and monuments.

December 14, 1988: Greenview Apartments obtained a construction loan from Flagler Federal Savings and Loan Association in the amount of $3,800,000 and executed a mortgage in favor of Flagler which was recorded the same date.

### III. The state court proceeding

April 1989: Flagler filed suit in Florida state court to foreclose its mortgage on the construction site, alleging that the loan was in default. Flagler named as parties defendant some 16 entities that it alleged had supplied work or materials to the construction job, including the appellants appearing in this appeal. Flagler alleged:

> The following parties have been joined in these proceedings, since they may claim some right, title, and interest in and to the subject property by virtue of being lienholders. Said entries, if any, is [sic] junior and inferior to Plaintiff's Mortgage and Security Agreement.

Each of these appellants was alleged to have filed a claim of lien on the property. A copy of each appellant's claim of lien, filed pursuant to Florida's mechanics' lien law, was attached to Flagler's complaint. Each claim of lien was sworn to as required by Florida law. Each briefly described the labor or services or materials supplied and the amount alleged to be unpaid. Each claim of lien had been filed in the Office of Records of Broward County, Florida.

Flagler prayed that the court "adjudge the lien of the Plaintiff's Mortgage and Security Agreement to be a valid first lien upon the property . . . superior to the rights, claims and liens of all Defendants to this cause." Flagler also asked for appointment of a receiver to secure and protect the property with power to complete the improvements. In short, from the beginning of this case to the present the lienholders have been identified persons or entities having claims against the property that Flagler alleged to be junior to its claim. The nature of each claim, the amount claimed by each lienor to be due, and the type of work out of which it arose have been

5

known to Flagler (and to RTC as its successor) from the claims of liens attached to Flagler's complaint.

October 16, 1989: Flagler moved for partial summary judgment of foreclosure on the ground that the liens were void because improvements had not been commenced within 30 days of July 28, 1988, when the Notice of Commencement was filed. It later moved for final summary judgment.

September 11, 1990: The Florida trial court granted summary judgment of foreclosure to Flagler on the ground that no visible improvements had commenced on the project within the 30 days following the recording of the Notice of Commencement; therefore, it held Flagler's mortgage had priority. Lienholders appealed.

September 25, 1991: The Florida District Court of Appeals, Fourth District, reversed the judgment of foreclosure and remanded for trial. Lacentra Trucking Inc. v. Flagler Sav. & Loan Assoc. of Miami, 586 So. 2d 474 (Fla. Dist. Ct. App. 1991). The court characterized the dispute as a familiar one, concerning priorities between a mortgagee and mechanics lienors, raising a precise question not previously answered in any Florida decision: whether surveying, flagging and staking a construction site for an improvement within 30 days of recordation of the Notice of Commencement can constitute actual commencement within the meaning of Fla. Stat. Ann. § 713.13. Id. at 475. The court held that the trial court had mistakenly relied upon a prior version of the mechanics' lien statute that had required "visible commencement" within 30 days of the Notice. Applying the current statutory standard of "actual commencement," the court reversed:

> There is no legal reason under the statute why the
> ascertainment of boundary monuments and flagging and staking
> might not be the exact moment of a beginning. There is some
> evidence in this record suggesting that this particular survey was

6

for mortgage financing, but there is other evidence suggesting that it might have been to lay out the dimensions of the foundation of the apartment building. There is certainly nothing here establishing that, for this kind of improvement, the process of physically altering the land with a permanent structure can never begin when lines are denoted by stakes and flags on the land itself. The mere fact that for some kinds of improvements it is always later does not mean, as a matter of legal construction of the statute, that for this one and others it cannot be earlier – e.g. when the stakes and flags are laid out. The essential meaning here is that the issue is to be determined by the facts of the particular improvement and its construction.

. . . .

We therefore conclude that a trial is required to establish what the facts are. As we are reversing for a trial, we think that the parties should be given leave to file amended pleadings with all of their precise legal claims and defenses, if they so desire.

Id. at 477. The case lay quiescent for six months until March 1992.

March 25, 1992: By letter, counsel for lienors submitted to counsel who had been appearing for Flagler written confirmation of the amount claimed by each lienor. These amounts were said to have been previously furnished to the addressee on February 21, 1992. Accrued interest was added to each claim producing a total for each. Also, "as requested by Flagler" the letter submitted a proposed compromise settlement figure for each claim.

March 26, 1992: RTC was appointed receiver for Flagler. Counsel for Flagler became counsel for RTC and, on March 26, received the March 25 letter describing lienors' claims.

April 5, 1992: As provided by the Act, 12 U.S.C. § 1821(d)(3)(B), RTC began publishing in local newspapers a notice to creditors of the institution to present claims to RTC as receiver within 90 days of its appointment, which the notice identified as expiring July 6,

1992. The Act also requires RTC to mail a similar notice to creditors as shown on the books of the institution, 12 U.S.C. § 1821(d)(3)(C). RTC failed to mail notices to lienors.[2]

April 13, 1992: According to the briefs, the parties agreed on this date to a 30-day stay of the case. The record discloses no court order to this effect; apparently this stay was not officially entered.

May 27, 1992: RTC moved to be substituted for Flagler as plaintiff in the state court proceeding, and, pursuant to § 1821(d)(12)(A), requested a stay of litigation not to exceed 90 days. The motion to stay made no reference to administrative exhaustion.

June 1, 1992: In state court RTC was substituted as plaintiff and the case stayed for 90 days.[3]

## IV. Federal court proceedings

June 17 or 18, 1992: RTC removed the case to the United States District Court.[4] During the life of the 90-day stay the parties proceeded with the pending case as though the stay were not in effect.

July 6, 1992: The time for filing claims as set by the RTC newspaper notices expired.

---

[2]We do not apply it to this case, but there is authority that if the receiver fails to give proper notice, the FIRREA claims process is not initiated, and the time period for filing claims only begins to run after the receiver has properly complied with the notice requirements. FDIC v. Updike Bros., Inc., 814 F.Supp. 1035, 1041 (D. Wyo. 1993).

[3]The period for filing claims set by RTC as receiver in the newspaper notice began April 5 and extended to July 6. It was not synchronized with the 90-day stay of litigation secured by RTC as plaintiff in state court, which began June 1.

[4]We need not address lienors' claim that RTC violated the stay by removing the case to federal court.

August 20, 1992: Pursuant to Federal Rules of Civil Procedures 26(f) and Local Rule 14 of the United States District Court, counsel conducted a scheduling meeting. As later noted in their Report of this meeting, they met, defined the issues for trial, exchanged documents, exchanged lists of witnesses, and discussed a discovery schedule. They discussed the likelihood of settlement, which they said they could not appraise until discovery was completed. They estimated trial time as three days. They described the principal issue to be as of what date construction was actually commenced within the meaning of the Florida statute, the issue remanded by the Florida District Court of Appeals. Other issues were identified as whether RTC could foreclose; whether defendants' liens were valid and perfected; whether fabrication of materials within 30 days of the notice of commencement constituted actual commencement; whether work done on easements or on appurtenant land constituted actual commencement; whether Flagler had funded the loan without compliance with Florida law concerning recommencement of interrupted construction; whether waiver, estoppel or the D'Oench doctrine barred the lienors from recovering on their claims.

August 29, 1992: The 90-day stay expired.

October 21, 1992: As required by Rule 26, the parties filed their joint report of their scheduling meeting. It set out the issues described above. It did not mention administrative exhaustion.

December 17, 1992: The court set the case for trial on May 3, 1993. Dates were set for a final pretrial conference, filing of discovery, and filing of pretrial motions. The parties were directed to file proposed findings of fact and conclusions of law.

From December 1992 to December 1994: The parties engaged in a blizzard of amended pleadings, briefs, reply briefs and supplemental briefs, interrogatories, depositions, objections and protective orders, motions to continue, motions to produce, motions to strike and counter-motions, requests for additional time, requests for status conference, and a panoply of other filings.

February 23, 1993:  Around this time, seven months after the stay expired, counsel for RTC orally called to the attention of an attorney for the lienholders that no claim had been filed with RTC as provided by the statute.  At no time previously had RTC notified the lienholders that, despite the pending case, it was insisting on the use of administrative procedures.  RTC had not furnished its usual forms for filing claims or usual instructions.  With leave, lienors filed their Fifth Amended Answer, Affirmative Defenses and Counterclaim.  They re-filed copies of their recorded claims of liens, and by counterclaim, asked the court to adjudicate the priority of their liens and hold that, because they had timely filed Notice of Commencement, their liens were prior to Flagler's mortgage.  Each claim was accompanied by a copy of the contract pursuant to which the work reflected by the claims was done.  By this stage of the case issues identified included claims of equitable subordination of Flagler's mortgage to lienors' liens, waiver and estoppel by Flagler, whether offsite fabrication of materials constituted actual commencement of improvements, failure of Flagler to give statutory notice of recommencement of work after it was shut down, the effect of Flagler's knowledge of inchoate liens when it closed its loan, alleged equitable liens, effect of title insurance, the D'Oench doctrine, the effect of the Florida Court of Appeals decision on issues not addressed – and more.  Lienors attached to their pleadings copies of contracts under which they had furnished labor and materials and

10

additional copies of their sworn recorded claims of liens. The amount alleged as owed to each lienor was shown and the nature of its work described.

Early March, 1993: Additional proceedings continued.

March 17, 1993: RTC filed a Reply to the Lienors' Affirmative Defenses and an Answer and Affirmative Defenses to Lienors' Counterclaims, setting out eight affirmative defenses. Neither FIRREA nor the matter of filing a claim was mentioned.

March 22, 1993: RTC moved to continue the trial.

On or about April 1, 1993: RTC announced readiness for trial.

April 2, 1993: A year after it was appointed receiver, ten months after it was substituted as plaintiff and the 90-day stay entered, nine months after the date for filing claims expired on July 6, 1992 and seven months after the stay expired, RTC filed a supplemental motion to dismiss, asserting for the first time that the district court had no jurisdiction of the case because the lienors had "failed to allege compliance with FIRREA, or allege any reason why compliance with FIRREA is excused."

April 15, 1993: Lienors moved for an order of court permitting them to file administrative claims. They requested forms for filing proof of claims and asked for a stay of the action until administrative procedures were completed. This was denied after the court's final order.

May 17, 1993: Lienors filed claims with RTC, ten months after the expiration date of July 6, 1992. These claims were never acted upon.

May 19, 1993: Pursuant to 12 U.S.C. § 1821(d)(6)(A) the lienors, relying on the May 17 filings, filed a motion to continue the pending action. We cannot determine that this was ever denied.

September 10, 1993: RTC wrote one of the lienors noting that its records showed that 180 days from filing claims ( the time allowed for approval or disapproval) would expire November 17, 1993, which necessarily referred back to claims that had been filed May 17. RTC asked for an extension of time to March 17, 1994 for it to allow or disallow the lienor's claim. According to the briefs all lienors received the letter. The letter also represented that if the lienor did not agree to the extension of time it could exercise its rights to judicial determination of its claim pursuant to § 1821(d)(6)(A).

July 5, 1995: More than three years after the case was remanded to the Florida trial court and stayed, the district court struck lienors' affirmative defenses and counterclaims and granted summary judgment to RTC on the ground that lienors had not complied with administrative provisions that required them to present their claims to RTC. It held that RTC's failure to mail notice to the lienors did not violate due process because the lienors had actual notice of the appointment of RTC as receiver and of the 90-day stay.[5] At the same time the district court acted on ten pending motions.

---

[5]We do not address the due process issue. Courts are divided on whether failure by RTC to give mail notice is a due process violation. See Greater Slidell Auto v. American Bank of Baton Rouge, 32 F.3d 939, 942 (5th Cir., 1994) ("The statutory requirement of mailed notice to claimants who become known applies as a constitutional minimum to a claimant known by reason of a law suit pending when the receiver is appointed."). To the same effect, Dule, J., concurring in Whatley v. Resolution Trust Corp. , 32 F.3d 905, 911 (5th Cir. 1994). In Damiano v. FDIC, 104 F.3d 328, 335 n. 13 (11th Cir. 1997), this court expressed its "serious constitutional concerns" regarding failure to mail notice. See also Freeman v. FDIC, 56 F.3d 1394, 1403 n.2 (D.C. Cir. 1995)(expressing the same concerns even though plaintiff had actual knowledge of the federal receivership).

Further litigation ensued over whether there should be a final order of foreclosure at which Flagler, as holder of receiver's certificates from the 1994 foreclosure, would have first priority. Lienors' efforts to obtain an accounting for interim rents and profits were denied.

January 9, 1996: Final judgment of foreclosure was entered in favor of RTC. By this time the court proceedings comprised a 10-volume record. Lienors appealed.

V. The Statutory Structure

We examine the structure of the system put in place by the Act. Its purpose is set out in H.R. Rep. No. 101-54(1), at 419 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 235: "the claims determination procedure . . . enables the FDIC [or RTC] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . . Thus, the claim resolution process established in this section should allow the FDIC [or RTC] to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts."

The Act requires the receiver to publish a notice to the institution's creditors to present their claims, together with proof, within less than 90 days and to mail a notice to creditors. 12 U.S.C. § 1821(d)(3)(B)&(C).[6] The receiver must allow or disallow the claim within 180 days. Id. § 1821(d)(5)(A). If a suit is pending concerning the claim the receiver may request a stay up to 90 days. Id. § 1821(d)(12)(A).

---

[6]The lienors assert that they are not subject to the Act because they are not creditors. This has no merit. The statute repeatedly refers to "claims" and "claimants," and these claimants are persons "seeking a determination of rights with respect too, the assets of the depository institution." 12 U.S.C. § 1821(d)(13)(E); see also Freeman v. FDIC, 56 F.3d 1394 (D.C. Cir. 1995).

13

If the claim is disallowed the claimant may seek review. It may request administrative review or file suit on the claim or "continue an action commenced before the appointment of the receiver." Id. § 1821(d)(6)(A).

We address the merits of the complex issues before us on the assumption that the FIRREA administrative claims procedure applies to this case. There is authority to the contrary. "[N]either the exhaustion of remedies requirement nor the FIRREA administrative claims procedure applies to actions the thrift itself commenced before it went under." Praxis Properties v. Colonial Sav. Bank, 947 F.2d 49, 64 n. 14 (3d Cir. 1991); see also Resolution Trust Corp. v. Love, 36 F.3d 972, 978 (10th Cir. 1994) (holding that affirmative defenses are defensive responses and neither "claims" nor "actions" within the provisions of § 1821, therefore they are not subject to the administrative claims procedures); National Union Fire Ins. v. City Sav., 28 F.3d 376, 393 (3d Cir. 1994)(holding the same).

## VI. The cases.

In Marquis v. F.D.I.C., 965 F.2d 1148, 1151 (1st Cir. 1992), the First Circuit described FIRREA as follows:

> FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses – a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising – it is inevitable.
>
> . . . . Section 1821(d) . . . is a relatively small piece of the statutory puzzle – but one which exemplifies the larger interpretative problem: Section 1821(d) is comprised of nineteen separately numbered fascicles, most with myriad subparts, occupying seven pages of the United States Code. It is, in short, an avalanche of words.

14

The Eastern District of Louisiana has described it more succinctly: "[T]he statute makes the Internal Revenue Code look like a first grade primer." Guidry v. Resolution Trust Corp., 790 F.Supp. 651, 653 (E.D. La. 1992).

The statute has given rise to a sunburst of litigation with widely varying interpretations and a wealth of conflicting decisions.[7]

RTC relies on the lienors' failure to exhaust by presentation of claims to the receiver prior to July 6, 1992, the published cut-off date, thereby precluding jurisdiction under § 1821(d)(13)(D). This ignores the central issue of whether jurisdiction of the federal court over the pre-receivership claims remained viable and, if it did, the actions required of the receiver. The district court disposed of these questions in a single sentence: "[T]he exhaustion requirement applies regardless of whether [as is true in this case] a claimant has brought suit on its claim prior to the RTC's appointment as receiver." This did not address the pre-existing jurisdiction. (Moreover, it was not adjusted to the facts. The pre-receivership suit was brought by Flagler, not the claimants.) Some cases speak in terms of the continued life of the pre-receivership case after a receiver is appointed, others of the continued jurisdiction of the court in which that case is pending. However phrased, neither the existence of a pre-receivership claim against the depository institution, nor the requirement of presenting claims to the receiver, nor the actual presentation – none of these – strips away the existing jurisdiction of the court over a pre-receivership claim. Nor is the court required to dismiss the pre-receivership case.

In its supplemental motion to dismiss, filed with the district court, RTC acknowledged:

---

[7]For example, see Annotation to Title 12 § 1821, in 1988 Supplementary Pamphlet to U.S.C.A. §§ 1751-2280.

15

> The effect of failing to comply with the administrative claims procedure while a suit is already pending at the time the Receiver is appointed has resulted in conflicting decisions.

That acknowledgment is correct. But substantial authority agrees that jurisdiction of the court continues over the pre-receivership claim.

> [W]e think that subsections (d)(5)(F)(ii), (d)(8)(E)(ii), and (d)(12) coalesce to show Congress' discernable intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver.

Marquis v. FDIC, 965 F.2d 1148, 1153 (1st Cir. 1992).

> [W]e agree with other circuits that have addressed this issue and conclude that when claims for monetary damages are brought before the RTC is appointed receiver, a court continues to have subject matter jurisdiction over these issues.

Carney v. Resolution Trust Corp., 19 F.3d 950, 955 (5th Cir. 1994).

> [W]here a claimant files its action against a depository institution before the institution becomes insolvent and is placed in receivership . . . the failure of the thrift and the appointment of RTC as receiver would appear not to divest the Federal Court of Jurisdiction, for "[i]t is a firmly established rule that subject matter jurisdiction is tested as the time of the filing of the complaint."

Praxis Properties v. Colonial Savings Bank, 947 F.2d 49, 63 n.14 (3rd Cir. 1991).

> [T]he FDIC may stay a case that is pending at the time the FDIC takes over a failed financial institution to allow the FDIC to analyze the case, but the court always retains jurisdiction . . . . If the court lost subject matter jurisdiction over the case the moment the FDIC took over the Bank, then Congress would not have provided for a 90-stay for the FDIC to analyze the case.

U.S. v. Chorice, 857 F.Supp. 672, 674 (W.D. Mo. 1994).

> Section 1821(d)(6)(A). . . allows a claimant to 'continue an action commenced before the appointment of a receiver after the administrative review procedure has been completed. . . . The term 'continue' implies that a party is proceeding forward in an ongoing

16

> case without an interruption in the court's jurisdiction. A claimant could not 'continue' an action over which the court has been deprived of subject matter jurisdiction.

Coston v. Gold Coast Graphics, Inc., 782 F.Supp. 1532, 1535 (S.D. Fla. 1991); see also Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1003 (4th Cir. 1994); Rosa v. Resolution Trust Corp., 938 F.2d 383, 392 (3rd Cir. 1991).

The issue we must decide concerns the interplay between the principles of law that govern the court having jurisdiction of a pre-receivership claim and the limitations on jurisdiction imposed by § 1821. The Eleventh Circuit, along with other courts, has addressed these questions. This court, and others, construe FIRREA to provide two separate schemes for the disposition of pre-receivership suits and post-receivership claims. See Damiano v. FDIC, 104 F.3d 328, 335 (11th Cir. 1997); Whatley v. Resolution Trust Corp., 32 F.3d 905, 908 (5th Cir. 1994); Greater Slidell Auto Auction v. American Bank & Trust Co., 32 F.3d 939, 941 (5th Cir. 1994); Carney v. Resolution Trust Corp.,19 F.3d 950, 956 (5th Cir. 1994); Marquis v. FDIC, 965 F.2d 1148, 1153-54 (1st Cir. 1992). Our decision is controlled by Damiano. We adhere to it as precedent, and also we reaffirm it as a correct decision that brings needed resolution to a confusing area of the law.

In Damiano this court drew on Whatley, which had addressed the relation between the limitation of jurisdiction provisions of the Act and the vested jurisdiction of a district court over a claim asserted in a pre-receivership suit. Damiano, 104 F.3d at 333. In Whatley plaintiff filed a contract and tort suit against a savings institution, RTC intervened, removed to federal court and stayed the proceedings. After this stay expired RTC was appointed as receiver and did not request another stay. It initiated the administrative claims process by publishing notice in a

17

newspaper but did not give mail notice to the plaintiffs. After the time for filing administrative claims had expired RTC filed a motion to dismiss the complaint for failure to exhaust. The district court dismissed for lack of subject matter jurisdiction. The Court of Appeals held that subject matter jurisdiction is tested as of the time of the filing of the complaint, therefore district courts presiding over actions properly filed prior to the appointment of a receiver continue to be vested with jurisdiction. Whatley, 32 F.3d at 907. The Fifth Circuit concluded that a separate scheme exists for the disposition of lawsuits filed pre-receivership. Id. at 908. Those claims, based on valid federal jurisdiction when filed, may be effected only through the stay provision.

> Congress created a separate scheme for the handling of pre-receivership actions, giving the receiver the privilege, but not the duty, to request a stay of judicial proceedings so that it might first consider the pending claim administratively. Neither a request for a stay nor the failure to request a stay deprives the district court of jurisdiction. Rather, if the receiver requests a stay, the court will defer action temporarily. If the receiver does not timely seek a stay, the judicial action will routinely proceed. This does not mean that the judicial process runs concurrently with the administrative remedy. Congress has given the receiver the option to either request a stay, and proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, *or* forego the privilege of requesting a stay and thus proceed judicially. Should the receiver choose to proceed administratively, it must request the stay within 90 days of its appointment; thereafter no stay may be sought and the judicial action is to proceed. (footnote omitted)

Id. (emphasis added).

The court analyzed the language of the statute and the legislative history.

> As in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress. The language of subsection 1821(d) is clear: "The Corporation *may* as receiver, determine claims in accordance with the requirements of this subsection." "After . . . appointment . . . [as receiver for an

18

insured depository institution, . . . [it] *may* request a stay for a period not to exceed . . . 90 days, . . . in any judicial action or proceeding to which such institution is or becomes a party." The term "may" is permissive; it neither indicates nor requires an exclusive means of action – it is discretionary. Paragraph (3)(A) allows, but does not require, the receiver to determine claims in accordance with FIRREA; paragraph (12)(A)(ii) grants the receiver the privilege, should it choose to proceed administratively, to request a stay of judicial proceedings. Neither provision is mandatory. The use of the term "shall" in other paragraphs of subsection 1821(d) supports this analysis.

The language of subsection 1821(d), and its legislative history, lends support to our conclusion. Absent a request for a stay pursuant to paragraph (12)(A)(ii), no provision of the subsection exists by which the judicial proceeding may be stayed. As congressional goals of efficiency and expediency would be prejudiced if administrative and judicial processes were allowed to proceed simultaneously, Congress obviously intended to grant the receiver the option to use initially either the administrative or judicial mechanism. If Congress had intended the administrative procedure to be exclusive for pre-receivership actions, it would not have provided for the permissive stay. It would have been a simple matter to provide for an automatic, mandatory stay of all pending judicial actions. This Congress did not do; this we will not do under the guise of statutory interpretation. [Footnotes omitted.]

Id. at 909.

Finally, the court expressed its disapproval of the lack of fair play in what it considered the sandbagging of valid claims by the receiver's allowing the time for a claim to expire without proceeding administratively and then moving to dismiss the pending action. Id.

Our decision in Damiano followed on from Whatley. In Damiano, the plaintiff filed a pre-receivership lawsuit against a savings and loan association, claiming age discrimination. The association became insolvent, and RTC was appointed receiver and substituted as defendant. RTC published a newspaper notice directed to claimants as provided by §

19

1821(d)(3)(C). And, as in the present case, there was inconclusive discussion of settlement. Damiano made an offer of settlement to the institution's counsel, but counsel was unable to predict when RTC would respond. Damiano renewed her settlement proposal to new counsel for RTC and discussed with the new counsel a date for trial. Subsequently, some eight months after RTC was appointed receiver, it moved to dismiss for failure of the plaintiff to exhaust and alternatively moved for a stay pending exhaustion. Damiano did not respond. The case was dismissed, reinstated, set on the trial calendar, and a new motion to dismiss was filed by RTC alleging lack of subject matter jurisdiction. The motion was granted three years after RTC was appointed . This court reversed. Damiano, 104 F.3d at 335. It joined with Whatley in holding that the statute establishes a scheme for lawsuits filed pre-receivership that is different from that for post-receivership claims. Id. at 333. It recognized that a court has no subject matter jurisdiction of a post-receivership claim until the claimant has exhausted administrative remedies. Id. But, as we explained, subject matter jurisdiction is ordinarily tested as of the time a complaint is filed; therefore a court in which a lawsuit was pending when RTC was appointed remains vested with jurisdiction. Id. This conclusion, the court held, was confirmed by the statute's provision for continuation, as opposed to the reinstatement, of pre-receivership lawsuits after the appointment of the receiver, and by the fact that the statute does not provide for an automatic stay of pre-receivership actions but gives the receiver the right but not the duty to seek a stay of pending action. Id. at 333-34. We found that the statute did not intend judicial and administrative processes to run concurrently but rather "intended to give the receiver jurisdiction of deciding whether to require the claimant to exhaust its administrative remedies or to allow the suit to proceed judicially. Id. at 334. We concluded:

20

> The drafters of FIRREA explained that the purpose of "the stay [is to] give[] the [receiver] a chance to analyze pending matters and [to] decide *how* best to proceed." H.R.Rep. No. 54(I), at 331, 1989 U.S.C.C.A.N., at 127 (emphasis added). Section 1821(d)(3)(A), which sets out the receiver's authority to determine claims administratively, <u>does not require the receiver to subject all claimants to the administrative process. Instead, it is permissive, providing that the RTC "*may*, as receiver, determine claims in accordance with the requirements of this subsection</u> [1821(d)." 12 U.S.C. § 1821(d)(3)(A) (emphasis added). <u>We conclude that Congress intended for the receiver to decide whether to "proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, *or* forego the privilege of requesting a stay and thus proceed judicially</u>." <u>Whatley</u>, 32 F.3d at 908.

<u>Damiano</u>, 104 F.3d at 334 (footnote and citations omitted)(emphasis added). Like the court in

<u>Whatley</u> we are concerned with RTC luring the claimant to assume that it is ready to deal with

it as a litigant while awaiting expiration of the administrative deadline after which it may

dispose of the claim favorably to itself without consideration of the merits. Also like the

<u>Whatley</u> Court, we concluded by noting that "[w]e neither find nor assign any such intent to

Congress in the enactment of FIRREA." <u>Damiano</u>, 104 F.3d at 335.

The purpose of the stay provision as explained by the drafters, "[is to] give the [receiver]

a chance to analyze pending matters and [to] decide <u>how</u> best to proceed." H.R.Rep. No.101-

54(1), at 331 (1989), <u>reprinted in</u> 1989 U.S.C.C.A.N. 86, 127 (emphasis added). But it is not

enough for the receiver to obtain a stay. If RTC desired to insist on the use of its administrative

process it was required to make its position known to the claimant.

> Thus, the RTC must satisfy two conditions to require the plaintiff in a pre-receivership lawsuit to exhaust its administrative remedies before continuing the action:: (1) <u>The RTC must "insist on the use of its administrative processes," by staying the action *and* informing the plaintiff that it is doing so pending exhaustion of the administrative remedies</u>, and (2) it must do so in a timely fashion,

21

that is, within the ninety-day period specified in § 1821(d)(12).
(Footnote omitted).  (Emphasis added).

Damiano, 104 F.3d at 335.

In a case decided before Damiano the Ninth Circuit has disagreed with Whatley and

Greater Slidell.  Intercontinental Travel Marketing, Inc. v. FDIC, 45 F.3d 1278, 1282-83 (9th Cir.

1994) holds that there is no separate statutory scheme for pre-receivership cases pending when a

receiver is appointed. We are, of course, bound by Damiano.  Nevertheless, we are constrained

to comment upon Intercontinental.  In our view it is not persuasive authority.  The Ninth Circuit

relied upon its earlier decision in Henderson v. Bank of New England, 986 F.2d 319 (9th Cir.

1993), as holding there is no subject matter jurisdiction over a claim against an insolvent bank

until claimant has exhausted his remedies.  But the claimant in Henderson had filed his suit after

the receiver was appointed.  There was no pre-receivership claim.  The Intercontinental Travel

court simply extended the Henderson holding to pre-receivership cases with a bare statement that

it saw no reason not to do so.  45 F.3d at 1282-83.  The Ninth Circuit found that the statute does

not create a separate scheme for cases pending when a receiver is appointed.  It did so without

reference to cases holding that jurisdiction over such pending cases continues.  See e.g.,

Marquis, Carney, Praxis, Choice, Coston, Brady, Rosa, noted at p. 16-17, supra, and cases

holding that the statute provides a separate scheme for such pending cases.  The Ninth Circuit

also relied upon the holding in several cases that Congress does not envision that administrative

and judicial review may take place simultaneously.  This misses the point.  Whatley/Slidell (and

Damiano) do not hold or suggest that there can be simultaneous review.  Indeed, Whatley

specifically recognizes that simultaneous review is not permitted.  32 F.3d at 905.  Rather the

22

three cases all recognize that the receiver has an option between the administrative or judicial mechanism and must choose between the two routes of review and make its choice known.

In a note published two years before Damiano the Whatley/Slidell analysis is described as a minority view, see Note, Resolving Pre-receivership Claims Against Failed Savings and Loans: An Unnecessarily Exhausting Experience, 63 Fordham L. Rev. 2315 (1995). The commentator concludes, however, that the Whatley/Slidell view of subject matter jurisdiction is "most consistent with the intent of Congress." Id. at 2316 and 2327.

In the case before us RTC stayed the action. But it did not inform the plaintiff that it was staying the case pending exhaustion of administrative remedies as required by Damiano. To the contrary, after the stay expired the case resumed its life. RTC permitted the pre-receivership litigation to proceed and participated freely in it, dealing with claimant's counsel as litigant. Not only did the receiver not make known a choice to use administrative processes but for months it pursued a course of action consistent only with litigation. It defined the issues for litigation. It utilized the litigation to obtain information on the issues for the determination of which the case had been remanded. The parties were exposed to months of litigation and major expense. The resources of the district court were needlessly dissipated. Disposition of RTC's assets received from the foreclosed property was delayed. Then, on the eve of trial, RTC invoked the administrative processes it had theretofore eschewed as a vehicle to dispose of the case favorably to its position without trial or hearing. This the receiver could not do. This case is the antithesis of the orderly and prompt procedures contemplated by the statute. It stands the statute on its head. The choice given RTC to choose between litigation and administrative process means

little if the receiver does not make known what its choice is so that the case, or the administrative process, can proceed accordingly.[8]

The fact that RTC obtained a stay does not alter the result. The stay is for RTC's benefit to allow it to analyze the case, determine its status, examine the merits of pending litigation, and decide on its course of action. Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1004 (4th Cir. 1994). It can choose litigation or administrative processing. The stay neither affects the choice nor diminishes the necessity to make a choice and reveal it. RTC chose litigation. It must abide by that choice.[9]

## VI. Presentation of the Claim

The requirement of presenting a claim to the receiver puts the receiver on notice of the existence of the claim and gives it the opportunity to analyze it and make a decision on whether to allow or disallow. The statute contains no instructions for filing a claim but merely speaks in numerous sections of "filing," see §1821(d)(3)(B), of a notice to creditors to "present their claims, together with proof," and in § 1821(d)(5)(C) of allowing "any claim received" on or before the specified date. RTC was given rule making power by § 1821(d)(4), but the parties have not relied on any such rules.

---

[8]For a different analysis of the proper handling of a pre-receivership suit, see FDIC v. Grillo, 788 F.Supp. 641, 647 (D.N.H. 1992). Grillo holds that the claimant may pursue the court action simultaneously with administrative claims resolution, or pursue only the administrative option, or only the court process. The decision finds the Congressional history to provide selected alternative remedies to the claimant and administrative adjudication to be neither exclusive nor mandatory. Id.

[9]McMillian v. FDIC, 81 F.3d 1041 (11th Cir., 1996), did not address the issues of the present case. It makes the usual statement that FIRREA makes administrative review mandatory. No pre-receivership claim was pending, so the interplay between the FIRREA law and existent jurisdiction was not an issue.

24

The facts of this case require a finding that lienors' claims were properly filed/presented. The most compelling facts are, of course, that the claims were in the hands of Flagler from the beginning of the controversy, and Flagler's suit was brought for the purpose of assigning a priority to the claims that in practical effect would make them valueless (or, at least, substantially less valuable). RTC became owner and manager of the suit, litigated it, and continues to do so. The policies underlying a requirement of presentation have been vindicated. It defies common sense to urge that Flagler and RTC have never been "presented" with the claims that have been in their hands since this controversy began.[10] Our concern is not with art form but with the rights of parties who have furnished goods and services and are entitled to qualify to be paid.

Pretermitting whether Flagler's suit, by itself, met the requirement of presentation (or, indeed, made the statute inapplicable, see note 9, supra), we turn to technical grounds asserted by RTC to presentation. RTC asserts that amounts were not stated, claims were not sworn to, and work was not identified. To the contrary, we find that the claims of liens, in the possession of Flagler and attached to its complaint, *were* sworn to, the amount claimed by each lienor *was* stated, and the nature of the work done *was* identified, though tersely. Amounts were re-identified in the March 25, 1992 letter of lienors' counsel to counsel for Flagler (who

---

[10]We are troubled by RTC's insistence that lienors' claim had to be submitted to it for allowance or disallowance when Flagler had brought the suit (to which RTC is successor) that would in effect disallow those very claims. Moreover, it utilized the litigation to obtain discovery on the issues remanded and to be tried. In FDIC v. diStefano, 839 F.Supp. 110 (D.R.I. 1993). FDIC sued the defendant for a deficiency on a foreclosed mortgage. Defendant counterclaimed, alleging breach of contract, torts and constitutional claims. FDIC moved to dismiss for failure to administratively file the claims. The court held that FDIC's action in bringing the case was a de facto denial of defendant's claims, accordingly the jurisdictional bar of FIRREA did not apply at all. Id. at 119.

25

immediately thereafter became counsel for RTC). Subsequently, in amended pleadings, lienors re-filed their claims of liens and with them filed the underlying contracts for the work done, and re-stated the amounts of claims.

RTC objects that the claims were not set out on its forms or in the manner required by its instructions for filing. But it not only failed to give mail notice; it did not furnish forms or instructions. Compare Capital Data Corp. v. Capital Nat'l Bank, 778 F.Supp. 669, 674 (S.D. N.Y. 1991) in which FDIC gave proper notice to claimant by mail as required by the statute and included a proof of claim form and directions that it had to be "completed in full, signed by a properly authorized signatory, notarized and returned along with supporting documents . . . or [the] claim [would] be forfeited." Lienors in this case received no such information.

The motion of the plaintiffs for rehearing is GRANTED. The decision of this court is VACATED, and this opinion is entered as the opinion of the court. The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings.

BARKETT, Circuit Judge, concurring:

I concur fully in the majority opinion because I believe Damiano clearly controls this case.

Damiano explicitly reads the permissive stay provision of § 1821(d)(12)(A) to mean that Congress "intended to give the receiver the discretion of deciding whether to require the claimant to exhaust its administrative remedies or to allow the suit to proceed judicially." Damiano 104 F.3d 328, 334 (11th Cir. 1997). Quoting Whatley v. RTC, 32 F.3d 905, 908 (5th Cir. 1994) to the same effect, the Damiano Court stated that "Congress intended for the receiver to decide whether to 'proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, or forego the privilege of requesting a stay and thus proceed judicially.'" Damiano, 104 F.3d at 334. The dissent inexplicably reads this statement to create options for *claimants*. However, this misreads Damiano. Damiano put the burden on the *receiver* to decide whether to proceed administratively or judicially. It is the receiver's election to go the administrative route – not the claimant's response to this election – that may be "based on the claimant's complaint or any substitute or supplemental filing it may request." Damiano, 104 F.3d at 334. In this case, just as in Damiano, the receiver did not make

27

known its choice to proceed administratively and so inform the claimant. To the contrary, in both cases, all of the actions of the receiver throughout were consistent with the choice of the judicial route.

Nor does the RTC's request of a stay in the present case change the analysis. The permissive stay created by FIRREA is intended to give the receiver a chance to analyze the case and decide how best to proceed. See H.R. Rep., quoted at 104 F.2d 334. Although RTC requested a stay in the present case, it never made known to the claimants that it had opted to require them to proceed administratively. Damiano is clear that compliance with § 1821(d)(12) requires receivers who have opted to stay the action to "inform[] the plaintiff that it is doing so pending exhaustion of the administrative remedies." id at 335. This RTC failed to do. Moreover, it continued vigorously to proceed with litigation. It cannot now claim that plaintiffs were on notice that it was the administrative route, and not the judicial one, that RTC intended to pursue.

The dissent also suggests that the language of § 1821(d)(5)(F)(ii), to wit, "the filing of a claim with a receiver will not prejudice any right of a claimant to continue any [pre-receivership] action [filed in court]" necessarily requires that the claimant file a claim with the receiver. This conclusion likewise flows from the misperception that it is the claimant and not the receiver that has the option. Once it is recognized that the obligation to elect to require claimants to file an administrative claim or to allow the judicial action to proceed is vested in receivers, it becomes clear that this provision is designed to *protect* claimants who are required to file administrative claims, not to require them to do so in cases where receivers have opted for a judicial disposition of the claim.

28

Finally, in Damiano, for purposes of the requirement of administrative exhaustion, this Court found FIRREA to differentiate between claims filed pre-receivership and those filed post-receivership. Given that claims filed in the courts prior to the appointment of receivers will be, by definition, at different stages of resolution, this reading is consistent with "FIRREA's aim of the 'expeditious and fair []' resolution of claims . . . and its concern for conserving judicial resources." Damiano, 104 F.3d at 334 (quoting H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215).

TJOFLAT, Circuit Judge, dissenting:

The issue before us today is surprisingly simple – whether to give deference to the statutory scheme designed by Congress to handle the problems associated with failed financial institutions or to ignore that scheme and apply rules of "common sense" and equity to enforce "the rights of parties who have furnished goods and services and are entitled to qualify to be paid." Ante at ___.  Unfortunately, the majority chose the latter course.

Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), to establish a regulatory scheme by which the FDIC could "dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . without unduly burdening the District Courts."  H.R. Rep. No. 101-54(I), at 419 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215.  In carrying out these goals, Congress created a very complex statutory scheme – one that some have called "an almost impenetrable thicket . . . – a veritable jungle of linguistic fronds and brambles."  Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992).  The mere complexity of the statute, however, does not give this court leave to abdicate its responsibility to determine what

29

Congress intended. As I find nothing in the statute or its legislative history that would support the interpretation the majority adopts today, I respectfully dissent.

I.

The procedure for handling a claim under FIRREA is fairly simple. Once the RTC/FDIC has been appointed as receiver, it must "promptly publish notice to the depository institution's creditors to present their claims." 12 U.S.C. § 1821(d)(3)(B) (1994). The RTC/FDIC is also required to mail notice to all known creditors of the institution. See 12 U.S.C. § 1821(d)(3)(C). The notification required by section 1821(d)(3)(B) begins a ninety-day window within which creditors must file claims with the FDIC.[1]

Once a claim is filed with the RTC/FDIC, the receiver must determine the validity of the claim, and must notify the creditor of its determination within 180 days of the filing. See 12 U.S.C. § 1821(d)(5)(A). Should the receiver require more time, it may request an extension from the creditor. See id. Regardless of whether the receiver requests additional time, however, a sixty-day window of time opens – at the earlier of (1) notification of denial of the claim, or (2) the end of the 180-day period that begins when the creditor files a claim – in which the creditor either may request administrative review of the receiver's determination or may "file suit on such claim (or continue an action commenced before the appointment of the receiver)." 12 U.S.C. § 1821(d)(6)(A).

---

[1] In Damiano v. FDIC, 104 F.3d 328, 331 (11th Cir. 1997), for instance, the published notification required that all claims be filed with RTC's claims department in Tampa, Florida, within ninety days of publication.

The statute does not distinguish between claims filed in court prior to receivership and those that arise after the receiver is appointed. The statute does provide for a stay of ninety days in any action that is pending at the time of the receiver's appointment; such a stay is to be granted automatically by the court upon a motion by the receiver. See 12 U.S.C. § 1821(d)(12)(A) & (B). The majority today argues that section 1821(d)(12) somehow indicates that Congress intended to create a different statutory scheme for handling pre-receivership claims. I agree that section 1821(d)(12) indicates that a newly-appointed receiver must decide whether to proceed with pending litigation or proceed administratively, and that administrative exhaustion is not mandatory. See Brady Dev. Co. v. RTC, 14 F.3d 998, 1003-04 (4th Cir. 1994). I do not agree, however, with the court's holding that a different scheme exists for the handling of pre-receivership claims – a scheme that relaxes the requirement that a creditor file an administrative claim with the receiver. After discussing the authority on which the majority relies, I will outline a more reasonable interpretation of the statute.

II.

The majority argues that a district court's jurisdiction continues over pre-receivership claims after the appointment of a receiver, citing specific sections of the United States Code as support. See 12 U.S.C. §§ 1821(d)(5)(F)(ii) ("Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the creditor to continue any action which was filed before the appointment of the receiver." (emphasis added)); 1821(d)(6)(A) ("[Before the end of the sixty-day window] the claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the

31

receiver).” (emphasis added)).  The majority also cites authority from this circuit and others supporting its assertion that jurisdiction over pre-receivership claims continues upon the appointment of a receiver.  I agree that jurisdiction continues even upon the appointment of a receiver; however, if the receiver requests a stay and thus chooses to proceed administratively, continued jurisdiction is dependent on the creditor exhausting all administrative remedies – and none of the cases the majority cites in support of its jurisdictional argument suggest anything different.

The majority cites Damiano v. FDIC, 104 F.3d 328 (11th Cir. 1991), as “controlling” in this case.  The holding in Damiano, however, addressed a different question – whether a receiver may disregard the requirements of section 1821(d)(12)(A) by not requesting a stay within the specified ninety-day period.  See Damiano, 104 F.3d at 335.[2]  The receiver in that case waited eight months before it requested a stay pending the exhaustion of administrative remedies.  See id.  Because the receiver did not make a timely motion to stay, “[t]herefore, it has elected to proceed with the lawsuit judicially by failing to insist on the use of its administrative process.” Id.  The receiver in our case, however, moved for a stay within two months of being appointed receiver, well within the prescribed ninety-day window.  The holding in Damiano, therefore, is distinguishable from this case.

The Damiano panel did address the provisions of the statute in question here.  Citing support from the Fifth Circuit, the panel reasoned that two separate schemes existed, depending

_____

[2] The Fifth Circuit has argued that § 1821(d)(12)(A) requires a receiver to move for a stay within the first 90 days of appointment.  See Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49, 67-71 (3d Cir. 1991).  I leave for another day the discussion of whether that court’s interpretation of the statutes and legislative history are correct, as my intention here is only to distinguish Damiano from the present case.

32

on whether the creditor had filed a pre-receivership suit.  See Damiano, 104 F.3d at 333-34

(citing Whatley v. RTC, 32 F.3d 905, 908 (5th Cir. 1994)).  For post-receivership claims,

administrative exhaustion is mandatory.  For pre-receivership claims, however, the burden shifts

to the receiver to

> satisfy two conditions [in order to] require the plaintiff in a pre-receivership
> lawsuit to exhaust its administrative remedies before continuing the action: (1)
> The RTC must "insist on the use of its administrative processes," by staying the
> action and informing the plaintiff that it is doing so pending exhaustion of the
> administrative remedies, and (2) it must do so in a timely fashion, that is, within
> the ninety-day period specified in § 1821(d)(12).

Id. at 335 (citation omitted).  Damiano further relies on Whatley, 32 F.3d at 908, for its assertion

that a receiver that decides to proceed administratively on a pre-receivership claim proceeds

"based on the claimant's complaint or any substitute or supplemental filing it may request."

Damiano, 104 F.3d at 334 (quoting Whatley, 32 F.3d at 908) (internal quotation marks omitted)

(emphasis added).  In other words, the Damiano panel stated that a creditor who has filed a pre-

receivership claim against the financial institution in court may proceed administratively on the

complaint filed in court, without making any further filing with the administrative arm of the

receiver.  This language in Damiano, and its reliance on Whatley, is not necessary to support its

holding that a receiver must either request a stay within ninety days of its appointment or forego

the opportunity to proceed administratively.  The statement therefore constitutes dicta.  To the

extent that the statement creates a heightened burden on the receiver or relieves the creditor of its

duty to file its claim administratively, it is an incorrect interpretation of the statute.

   The majority relies on Marquis v. FDIC, 965 F.2d 1148, 1153 (1st Cir. 1992), for the

proposition that courts "preserve jurisdiction over civil actions filed against failed institutions

prior to the FDIC's appointment as receiver," a point which I do not dispute.  That same court,

33

however, noted that "[w]e think that FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver." Id. at 1151. That court further states that, "where a claimant has been properly notified of the appointment of a federal insurer as receiver, and has nonetheless failed to initiate an administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court." Id. at 1152 (citations omitted) (emphasis added). This language supports the idea that the creditor must satisfy the requirements of the administrative process, and may not rely on Whatley's assertion that filing a pre-receivership action in an Article III court fulfills FIRREA's requirement that a creditor file a claim with the FDIC.

The majority cites Carney v. RTC, 19 F.3d 950, 955 (5th Cir. 1994), as further support for the rule that appointment of a receiver does not divest a court of jurisdiction over a claim against the underlying failed institution. Again, I agree, except that any jurisdiction (and continuation of the case) is subject to completion of the administrative process with respect to the claim. The court in Carney cites language from a House Report discussing the legislation, which states:

> Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim. Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC.

Id. at 956 (citing H.R. Rep. No. 101-54(I), at 418 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 214) (emphasis in original). That language suggests that even pre-receivership claims filed in court may be resumed within sixty days only after administrative denial of the claim, thus

34

requiring creditors to exhaust their administrative remedies if the receiver requests a stay. In short, the majority's support for the proposition that a court does not lose jurisdiction of a pre-receivership claim upon the appointment of a receiver is insubstantial; even those cases relied upon by the majority generally recognize that the creditor must satisfy the administrative requirements prior to proceeding with or continuing legal action in court.[3] Without this support, the majority's interpretation is left wanting. I therefore offer a more reasonable interpretation of the statute.

## III.

For some reason, the majority interprets the statutory language permitting a receiver to request a stay in court proceedings involving a pre-receivership claim to create a different statutory scheme for pre-receivership claims than for post-receivership claims. I agree with the majority that the statute permits the receiver to request the stay, but does not require such a

---

[3] The majority also cites Brady Dev. Co. v. RTC, 14 F.3d 998 (4th Cir. 1994); Praxis Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49 (3d Cir. 1991); Rosa v. RTC, 938 F.2d 383 (3d Cir. 1991); United States v. Chorice, 857 F. Supp. 672 (W.D. Mo. 1994); and Coston v. Gold Coast Graphics, Inc., 782 F. Supp. 1532 (S.D. Fla. 1991). Each of these cases, however, also recognizes that the creditor must satisfy the administrative requirements before proceeding with or continuing a lawsuit. See Brady, 14 F.3d at 1005 (endorsing the Tenth Circuit's interpretation of this statute and stating: "On the contrary, we conclude that [plaintiff's] right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions."); Praxis, 947 F.2d at 63 n.14 (recognizing, but expressing no position on, the fact that some courts had "inferred from § 1821(d)(3)-(8) and (13) a right to a 180-day stay of the pending judicial proceeding, requiring the claimant to exhaust the administrative review process before returning to court"); Rosa, 938 F.2d at 391-92 ("Subsection (d) of § 1821 provides for de novo district court jurisdiction only after the filing of a claim with, and the initial processing of that claim by, RTC pursuant to § 1821(d)(5) and (6)(A)." (citation omitted)); Chorice, 857 F. Supp. at 675 ("However, the court will lose jurisdiction if the claimant does not timely file a claim with the FDIC."); Coston, 782 F. Supp. at 1536 (concluding that "Congress intended to stay actions against an insolvent bank filed prior to the FDIC's appointment as receiver until the claimants have complied with the FDIC's administrative review process.").

35

request.  In no way, however, does this language create a separate scheme for handling pre-receivership claims.  On the contrary, this language permits the receiver either to continue with the litigation or to proceed under the same administrative scheme set up for post-receivership claims.  The legislative history of FIRREA supports this interpretation.

In House Report 101-54(I), Congress laid out the framework for handling claims with a receiver.  See H.R. Rep. No. 101-54(I), at 418-19 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 214-15.[4]  The Report's statement that a "motion to renew . . . must be brought . . . within 60 days after the denial of the claim," when followed by its statement that "[r]esort to the [courts] . . . is available only after [exhaustion]," discounts any inference of Congress' intent to create separate statutory schemes. Furthermore, nothing in the language or legislative history of FIRREA leads to the conclusion that a creditor who has filed a pre-receivership action is relieved from filing an

_____

[4] The House Report states:

> The reported bill directs the FDIC to promulgate rules and regulations establishing a variety of administrative procedures and systems to determine contested claims.  These procedures will apply to proceedings conducted by the FDIC and to those conducted by the RTC.  After exhaustion of streamlined administrative procedures, a claimant has a choice to either bring the claim de novo in the District Court in which the insured institution had its principal place of business or have the claim determination reviewed by one or more administrative processes.  The agency's determination whether to allow a claim must be made within 180 days after the claim is timely filed, unless both parties agree to extend that time period.  A notice of disallowance becomes final unless the claimant files an objection within 30 days of the mailing of such notice.  Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim.  Resort to either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC.

H.R. Rep. No. 101-54(I), at 418 (1989), reprinted in 1989 U.S.C.C.A.N. at 214.

36

administrative claim with the receiver. Section 1821(d)(5)(F)(ii) does state that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any [pre-receivership] action [filed in court]." That language, however, necessarily requires that the creditor <u>file a claim with the receiver</u>. Moreover, section 1821(d)(6)(A) permits the creditor to "continue an action commenced before the appointment of the receiver;" the creditor may continue that proceeding, however, only after the initial administrative procedures have taken their course and resulted either in the disallowance of the claim or the running of the 180-day period for making such a determination. Neither provision, and nothing in the legislative history, suggests that any of the administrative procedures may be avoided by a creditor who has a pending pre-receivership lawsuit.[5]

For its interpretation of the statute, the majority relies heavily on the Fifth Circuit's opinion in <u>Whatley</u>,[6] in which the court stated that "Congress has given the receiver the option to either request a stay, and proceed administratively based on the claimant's complaint or any substitute or supplemental filing it may request, or forego the privilege of requesting a stay and thus proceed judicially." <u>Whatley</u>, 32 F.3d at 908. Unfortunately, the court in <u>Whatley</u> provided

---

[5] See <u>RTC v. Mustang Partners</u>, 946 F.2d 103, 106 (10th Cir. 1991). That court noted:

> The statute clearly requires that each creditor file a claim. In the event the claim is disallowed, the creditor can then file suit or continue to pursue a suit already filed. <u>No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process</u>.

<u>Id.</u> (citation omitted) (emphasis added).

[6] <u>Whatley</u>, like <u>Damiano</u>, is distinguishable from our case. While the receiver in <u>Whatley</u> failed to seek the stay permitted under § 1821(d)(12)(A), the receiver in our case timely sought a 90-day stay. <u>Whatley</u>, therefore, is inapposite.

no support for this "bare statement." At the same time, the majority here dismisses the holding of Intercontinental Travel Marketing, Inc. v. FDIC, 45 F.3d 1278 (9th Cir. 1994), – calling it a "bare statement" – because that court failed to support its holding that pre-receivership claims should be treated the same as post-receivership claims. I find it interesting that the majority is willing to accept some "bare statements" while dismissing others.

In my view, Intercontinental provides the most reasonable interpretation. In Intercontinental, the court found that the "no prejudice" language of section 1821(d)(5)(F)(ii) merely meant that "filing a claim with the FDIC will not prejudice claimants who decide to continue an action in the district court after having complied with the administrative process." Intercontinental, 45 F.3d at 1283. The court in Intercontinental concluded that section 1821(d)(6)(A) clearly indicated Congress' intent to apply FIRREA to pending judicial actions. See id. at 1282-83. Finally, the court held that filing suit could in no way permit a creditor to avoid the administrative process set forth by FIRREA. See id. at 1283.

The court in Intercontinental acknowledged Whatley's interpretation of the statutory scheme but dismissed it. The Whatley court was concerned that requiring pre- and post receivership claims to be treated the same would allow the receiver to "lie[] in ambush, awaiting expiration of the administrative deadline so that it [could] dispose of the claim without consideration of its merits." Whatley, 32 F.3d at 908. The Intercontinental, court, on the other hand, placed less emphasis on the notice requirements of section 1821(d)(3)(C). The court also noted that the receiver did publish notice in the required fashion under section 1821(d)(3)(B), and that the creditor had actual notice of the receiver's intent to follow the administrative procedures because of the requested stay in the judicial proceedings. See Intercontinental, 45

38

F.3d at 1281, 1285-86.  I favor the <u>Intercontinental</u> approach.   The receiver in our case complied with the notice publication requirements, and the creditors received actual notice on May 27, 1992, when RTC moved for a ninety-day stay under section 1821(d)(12)(A).[7]  Those actions were sufficient to put the creditors on notice that the receiver intended to proceed administratively.

The strict statutory requirements of section 1821(d) and the internal procedures of the receiver, along with the requirement of notice to all creditors, highlight the need for creditors to file administratively in accordance with the set procedures.  When a creditor fails to follow these procedures, its claim is lost and judicial review is barred.  Having received actual notice, the creditors here should have filed administratively with the RTC.  Because they failed to follow the administrative procedures, their claims should be lost and further judicial action should be barred.

For the foregoing reasons, I respectfully dissent.

---

[7]  The majority emphasizes that the publication of notice and the filing for a stay were not simultaneous, and that the request for a stay did not mention "administrative exhaustion."  These facts are of no consequence, because the creditors did not file an administrative claim within either 90-day period.  Furthermore, the mere fact that the motion for stay did not mention exhaustion did not relieve the creditor of responsibility to seek administrative remedies.  The very fact that the receiver sought the stay under the statutory provisions of FIRREA indicates its intention to proceed administratively.